THE CITY OF CHICAGO, Appellant, *v.* THE ROCK ISLAND RAILROAD COMPANY, Appellee.

APPEAL FROM COOK COUNTY COURT OF COMMON PLEAS.

Special authority delegated by legislative enactment to particular persons, or summary proceedings without personal service, to take away a man's property and estate against his consent, must be strictly pursued, and this must be shown on the face of the proceedings.

Since the act of February, 1857, amendatory of the charter of the city of Chicago, there is but one collector and his assistants, and that collector must apply to some court of general jurisdiction for an order of sale of lands, etc., to satisfy assessments. Special collectors cannot make this application.

Where a command issued to a special collector to levy of the goods and chattels, had he made a levy, he could have completed the execution, even after the passage of the amendatory act. Had the warrant been issued against lands, the special collector could not have sold, as he had only been commanded by the common council, and not by some court of the city, having competent jurisdiction.

THE Common Council of the City of Chicago made a special assessment for extending La Salle street from its present terminus (Madison street) to Jackson street, which was confirmed June 9, 1856. A warrant in due form was issued to George W. Colby, special collector of the south division of Chicago, dated June 17, 1856, by which he was directed to collect said assessment out of the goods and chattels of the respective owners of the real estate assessed, and to make return in what manner he should execute his writ, within thirty days from the date thereof.

Colby, the special collector, never made any return of his warrant; but, on the 31st day of December, 1857, he published, in the corporation newspaper, a notice, stating that he had in his hands for collection " Warrant 207, S, opening La Salle street from Madison street to Jackson street," with other warrants, and requested all persons who had not paid their assessments to pay the same.

On the 15th day of January, 1858, Colby, the special collector, published, in the corporation newspaper, a notice, stating

that he should, on the 27th day of January, 1858, apply to the Cook County Court of Common Pleas, at a special term thereof to be held on that day at the court-house in Chicago, for judgment against all blocks, lots, sub-lots, pieces and parcels of land, together with the improvements, if any, situated thereon, for all taxes, assessments, interests and costs due thereon, and remaining unpaid, as appears from the following described warrants then in his hands for collection, to wit: " No. 207, S, 17th June, 1856, special warrant, opening La Salle street from its present terminus, at Madison street, south to Jackson street."

On the 27th day of January, 1858, Colby presented to said court his report of the delinquent lands, lots, etc., and asked for judgment against the same; to which objections were made, and the court refused to render the judgment asked, and dismissed said application at the costs of the city. Colby, the special collector, in the name of the city, brings the case to this court for a revision of the judgment of the court below.

Prior to the amendment of the city charter, approved Feb. 14, 1858, the people elected one collector, who collected the general revenue of the city, and the common council appointed special collectors for the several divisions of the city, who collected the warrants for special assessments in the respective divisions for which they were appointed. These special collectors were elected in the month of March, in each year, and held their offices for one year. They were required to conform, in the execution of their duty, to the provisions of the charter and the ordinances of the common council, regulating and prescribing the duties of collectors. At the time the several warrants mentioned in the record in this case were delivered to George W. Colby, he was the special collector of south division of the city, and his term of office was to expire in March, 1857. The amendment to the city charter, approved February 14, 1857, and in force from its passage, provided that from and after the passage of that act, there should be no special collectors of the city revenue or assessments appointed by the common council, and since that time no special collectors have been appointed. The ordinance prescribing the duties of collectors, required them, whenever an assessment was paid, to mark the word " paid " on the face of the warrant, opposite the real estate charged therewith. All warrants were required, by ordinance, to have a return day therein named, which the common council might, from time to time, extend by resolution. On the return day of the warrant, the collector was required to make return thereof to the common council, according to a form prescribed by the ordinance. The return designated the assessments collected as those marked paid upon the face of the warrant, and all others

as uncollected. Upon the return of any warrant unsatisfied, in whole or in part, an order was to be made by the common council for the sale of the real estate on which the assessments so remained unpaid. The power of the common council to pass an order of sale was materially modified by the act of March 1st, 1854; the duties of the collector, however, remained the same after the passage of that act as before, and the proceedings which the common council were authorized to take could only be taken after the warrant was returned, in the manner above mentioned, unsatisfied in whole or in part. It is under these circumstances that Colby refuses to return his warrants, and claims that, although out of office, he has full power and authority to proceed in some way to collect the assessments mentioned in the warrants in his hands.

The process of the collector in the present case was a several one against each land owner whose lands were assessed; and as to the persons whose assessments now remain unpaid, it appears that the collector never attempted to execute it in any manner whatever, until long after his term of office expired.

SCATES, McALLISTER, JEWETT & PEABODY, for Appellant.

BECKWITH & MERRICK, and N. B. JUDD, for Appellee.

WALKER, J. This was an application by a special collector of the city of Chicago, to the Cook County Court of Common Pleas, at the January term, 1858, for an order of sale of certain lots, upon which assessments had been levied, for the extension of La Salle street. The record shows that the common council confirmed this assessment on the 9th of June, 1856, and issued a warrant to George W. Colby, special collector for the south division of Chicago, for its collection, dated the 17th day of June, 1856, returnable in thirty days from its date. The warrant commanded him to collect the several amounts of the goods. and chattels of the respective owners of the real estate on which the assessments had been made. Colby never returned this warrant. On the 31st day of December, 1857, he gave notice, in the corporation newspaper, that the warrant was in his hands for collection, and requiring the owners to make immediate payment. He, as special collector, gave a further notice, in the same paper, that he should, on the 27th day of January, 1858, apply to the Cook County Court of Common Pleas, on that date, for an order of sale of the lots, sub-lots, blocks, pieces and parcels of land, together with the improvements, if any, situated thereon, to satisfy all taxes, assessments and costs due thereon and unpaid, as appeared by this warrant, which was described.

That on the 27th day of January, 1858, he returned to the court a list of the delinquent lands, lots, etc., in the assessment, and applied for an order for their sale, to satisfy the amounts remaining unpaid. This application was resisted by the defendants, and the proceeding was dismissed by the court, on their motion. And the plaintiff brings the cause to this court to reverse the judgment of the court below.

The act to amend the charter of the city of Chicago (Private Laws 1851, p. 134,) provides, that at the annual election of officers, there shall be elected a collector. The same act provides, that there shall be one or more collectors. The city, by ordinance of the 17th July, 1856, provided that, in addition to the collector elected by the people, there should be, thereafter, three other city collectors, who should be appointed by the common council, on the second Tuesday of March in each year. They were required by the ordinance to collect all warrants for special assessments, for opening any street, alley, etc. The 8th section of chap. 8, p. 159, Private Laws 1851, provides that, in case of the non-payment of taxes or assessments, the premises may be sold at any time within two years; but before any sale shall be made, an order shall be entered by the common council on the records, directing the collector to sell, particularly describing the delinquent premises and assessment for which the sale is to be made. The amended charter of the city of Chicago, approved the 14th February, 1857, (Private Laws, 892, sec. 27,) provides, that from and after its passage, there should be no special collectors of the city revenue or assessments appointed by the common council, other than assistants to the city collector, who shall in all cases be the principal in the collector's bureau of the treasury department. Private Laws 1857, p. 899. By the 40th section of this act, p. 902, it is provided, that " if, from any cause, the taxes and assessments charged in said assessment warrants are not collected or paid, on lands or lots described in such warrants, on or before the first Tuesday in January ensuing the date of said warrants, it shall be the duty of the collector to prepare and make report thereof to some court of general jurisdiction, to be held in Chicago, at any special, vacation, or general term thereof, for judgment against the lands, lots and parcels of land, for the amount of taxes, assessments, interest and costs respectively due thereon ; and he shall give ten days' notice of his intended application, before the first day of the said term of the said court, briefly specifying the nature of the respective warrants upon which such application is to be made, and requesting all persons interested therein to attend at such term ; and the advertisement so published shall be deemed and taken to be sufficient and legal notice, both of the aforesaid intended

application by the collector to said court for judgment, and a refusal and demand to pay the said taxes and assessments." The act then provides for the rendition of judgment, the process under which the sale shall be made, and the notice of sale. The 87th section, p. 911, repeals all parts of the act of which it is amendatory, and the several acts amending the same, as are inconsistent with or repugnant to the provisions of this act, but leaves all acts and parts of acts not inconsistent therewith in full force.

These seem to be the only legislative enactments necessary to be considered in the determination of the questions presented by this record. Since the determination of the case of *Rex* v. *Croke*, 1 Cowper, 30, the rule has been recognized and uniformly adhered to, that a special authority delegated by legislative enactment to particular persons, or summary proceedings without personal service, to take away a man's property and estate against his consent, must be strictly pursued, and it must so appear on the face of the proceedings. This court has adopted and acted upon this rule, and it is believed every State in the Union has done the same in sale of lands for taxes, and in appropriating private property for public uses. This rule is so uniform and familiar, that it would be useless to quote authorities in its support. To give the court jurisdiction the authority must be strictly pursued, and a failure to do so renders the whole proceeding void. The statute alone confers the authority, and the mode it prescribes can alone be adopted. Then, did the statute authorize this proceeding? The amendatory act of the city charter of 1857 was in force when the assessment was made and confirmed, and when the warrant was issued, and for several months after its return day. Colby, under that act, had the undoubted right to return this warrant and procure an order of sale from the common council at any time before the passage of the act of February, 1857. That act provided that there should, after its passage, be but one collector and his assistants, and that he should apply to any court of general jurisdiction in the city for an order of sale of lands, etc., for the payment of taxes and assessments that remained due and unpaid on the first Tuesday in January. By this act, no power was conferred on special collectors to make the application. This act had also repealed all former acts which were inconsistent with its provisions. The application by any other person than the collector, or an order made by any authority other than a court of general jurisdiction, was inconsistent with its provisions. This was an assessment which was due on the first Tuesday in January and was clearly embraced in its provisions, and the collector alone had the right to apply to the Cook

County Court of Common Pleas for an order of sale. No such power had been conferred on this special collector, nor is there in the act any clause which saves this assessment from its provisions, and the proceedings for their collection out of the real estate upon which they are assessed must be the same as in other cases.

It was urged that the passage of the act of February, 1857, did not affect the collection of this assessment, because the officer had commenced execution. As a general proposition, it is true that when an officer commences to execute a *fi. fa.* by a levy, he may complete it, notwithstanding the writ may have died or his office have expired before its completion. But in this case the writ only commanded him to levy goods and chattels. Had he, under it, while it was alive, levied upon goods and chattels, he could have completed the execution by their sale, even after the death of his writ or the expiration of his office. But this writ did not authorize him to levy or sell these lands, and if it had, the command would have been void for want of such power in the common council. There was no judgment against the lands—no order of sale, and he could do no act affecting them without an order from the common council, made after the return of the first warrant issued. The levy and confirmation of the assessment became a lien on these lands, but nothing more. It might as well be insisted that the sheriff, who receives a *fi. fa.* and fails to levy before the return day, and while he is in office, has commenced execution, and has a right to complete it after the return day, and after his office has expired. His power to act ceased with the repeal of the law under which he obtained his warrant. The other questions involved in this case have been discussed in the case of the *City of Ottawa* v. *Macy et al.*, at the present term of this court, and it is deemed unnecessary to again discuss them here. Upon this record we are unable to discover any error, and the judgment of the court below should be affirmed.

*Judgment affirmed.*