## LEONARD v. PILKINTON.

1. The power of the tax-collectors of this State to issue executions against wild and unimproved lands, because of the non-payment of taxes due thereon by the owner, is dependent upon a non-return of such lands for taxes by the latter, and it is, therefore, essential to the exercise of this power, and to the validity of the title of a purchaser of such land, acquired at a sale made under and by virtue of an execution so issued, that it appear from the recitals in the execution, not only that the land against which the same was issued was wild and unimproved, but that it was likewise not returned for taxes by the owner.

2. A paper purporting to be a tax execution, addressed to the sheriffs of this State, and directing "that of the goods and chattels, lands and tenements" of a specified lot of land (which though in fact wild was not so described in the paper) they cause to be made stated sums "due by him for 'his'" State and county taxes for a named year, was not a legal execution against any defaulting taxpayer because none was named; nor was it a legal execution against the land described, for even if, in spite of the looseness of its phraseology, it could otherwise be so regarded, it was fatally defective, in that it did not recite that the land was wild, or that it had not been returned for taxes, or that any taxes were due thereon, or set forth any facts authorizing the issuing of a tax execution against the property *in rem*.

Argued November 16,—Decided November 23, 1896.

Equitable petition.  Before Judge Fish.  Dooly superior court.  March term, 1896.

*Busbee, Crum & Busbee*, for plaintiff.
*J. H. Martin*, for defendant.

ATKINSON, Justice.

D. B. Leonard brought his action against B. S. Pilkinton for trespass, recovery of land, cancellation of deeds, injunction, etc.  The land in dispute was lots 157 and 159 in the 6th district of Dooly county.  Upon the trial plaintiff introduced the wild land tax digest for the years 1884 and 1885, which showed that said lots had not been returned for taxes for either of those years.  The instrument under which plaintiff claims the land in controversy is a deed

from the sheriff of Dooly county to himself, dated April 11th, 1887, which recites that on June 29th, 1886, the sheriff levied a certain tax *fi. fa.* against a certain lot of wild land No. 157 in the 6th district of Dooly county, issued by the tax-collector of said county for taxes due upon said lot for State and county purposes for the year 1885; that the lot of land was duly advertised in the manner and for the time prescribed by law in the "Dooly Vindicator," a newspaper published in the town of Vienna, and county of Dooly, said paper being the official organ of said sheriff, and afterwards, to wit, on the 5th day of April, 1887, the same being the first Tuesday in the month of April, 1887, did expose said property for sale at the court-house door in Vienna, the county site of said county, between the legal hours of sale, under said levy and advertisement aforesaid, and did sell said property so levied on to said D. B. Leonard, he being the highest and best bidder, at and for the sum of $51.00.   (Also a sheriff's deed identical with the deed last described, except that it conveyed lot 159 instead of 157, and the consideration was . $105.00 instead of $51.00).   An exact copy of the *fi. fa.* referred to in said sheriff's deed, and which together therewith was offered in evidence by the plaintiff, is as follows:

"State of Georgia, Dooly County.
          To the sheriffs of this State:

"You are hereby commanded that of the goods and chattels, lands and tenements of lot of land 157, 6th dist. Dooly county, Georgia, you cause to be made the sum of ——dollars and seventy cents, due by him for his State taxes for the year 1885; and the further sum of——dollars and eighty cents, due by him for his county taxes for the year 1885, and the sum of————dollars and fifty cents for costs of *fi. fa.*, and have you promptly the said sums of money to be paid to us upon collection thereof, to be rendered to the said State and county, the principal and costs aforesaid, and have you then and there this writ. Given under my hand and seal this 23d day of June, 1886.
          [Signed]     John H. Woodward,
          Tax-Collector for Dooly County, Ga."

This paper had the following entries thereon:

"Georgia, Dooly County.    I have this day levied the within tax *fi. fa.* on lot of land number 157 in the 6th land district of said county, for State and county taxes for the year 1885.    This June 29th, 1886.

[Signed]      Russell Kellam, Sheriff, D. Co., Ga.

"Recorded on page 421 Book 'M' April 12th, 1889.

[Signed]      Z. T. Penny, C. S. C., Dooly Co., Ga."

(Plaintiff also offered in evidence a paper which was an exact copy of the one next above described, with the exception that it was issued against lot 159 instead of lot 157, the levy being identical, but separate, and the record thereof being on pages 418 and 419 of the same book of records.) To the introduction of said deeds and *fi. fas.* counsel for defendant objected upon the ground that the *fi. fas.* were void, for the reason that they should have shown on their face that the lands were unreturned wild lands, and that said deeds should have shown that the lots were offered in parcels before the whole lot was sold.    The court below sustained the objection, excluded both the deeds and executions offered, and upon motion of counsel for defendant granted a nonsuit, to which ruling plaintiff excepts.

1. The right of the plaintiff to maintain this action is dependent upon the validity of his claim to the land in controversy.    It is an established principle of law, that the legality of a tax execution under which a sale of land is made is essential to the validity of the title of a purchaser of such land thereunder.    Black in his work on Tax Titles lays down the general rule to be, "The title to be acquired under statutes authorizing the sale of land for taxes must be regarded as *stricti juris*, and whoever sets up a tax title must show that all the requirements of the law have been complied with."    In this case, therefore, it will only be necessary for us to inquire as to whether or not the *fi. fa.* referred to in the sheriff's deed and now under consideration was regular and legal, and in strict compliance with the statute authorizing its issuance.   Code, §874(b) provides

that *"Any wild lands not given in for taxes* in the county
in which they may be, shall be subject to double tax, as
other property, and it shall be the duty of the receiver of
tax returns, when taxes are not paid in the time provided
by law, to issue executions against said wild land, and after
due advertisement, as now prescribed by law, to sell said
lands for payment of taxes," etc. By the act of 1882, p.
47, this section of the code was amended by striking the
words "receiver of tax returns," and inserting in lieu thereof
the words "tax-collector," so that said section as amended
reads as follows:  *"Any wild lands not given in for taxes*
in the county in which they may be shall be subject to dou-
ble tax as other property, and it shall be the duty of the
tax-collector, when taxes are not paid in the time pre-
scribed by law, to issue execution against said *wild lands,*
and after due advertisement, as now prescribed by law, to
sell said land for payment of taxes."

From this statute it will be noted that the power of the
tax-collectors of this State to issue executions against wild
and unimproved land, for the non-payment of taxes due
thereon by the owner, is dependent upon a *non-return* of
such lands for taxes, because it expressly limits such power
to "wild lands not given in for taxes;" and it is therefore es-
sential to the exercise of this power, and to the validity of
the title of a purchaser of such land, acquired at a sale
under and by virtue of an execution so issued, that it ap-
pear from the recitals in the execution, not only that the
land against which the same was issued was  wild and unim-
proved, but that it was likewise unreturned for taxes by the
owner.  The execution in the present case fails to state
anything with reference to the land against which it was
issued being wild and unimproved.  It is also silent as to
the fact of it not having been "given in for taxes" by the
owner.

Code, §897, provides: "When property is assessed for
taxes, which has not been returned by any one, as soon as

assessed, the tax-collector shall at once issue an execution against it for the amount due and costs, and the sheriff shall advertise it for sale in some public gazette," etc. Under this provision of the statute, where the tax-collector seeks to sell land other than wild, which is unreturned, the execution should not only show that the same has been assessed for taxes, has been unreturned, but that the owner is unknown; for, in order to authorize the issuance of an execution for the collection of taxes *in rem*, it is necessary to show that the owner thereof is unknown.

2. The paper under consideration purporting to be a tax execution was addressed to the sheriffs of this State, and directed "that of the goods and chattels, lands and tenements" of a specified lot of land (which though in fact wild was not so described in the paper), they cause to be made stated sums "due by him for his" State and county taxes for a named year. This was certainly not a legal execution against any defaulting taxpayer, because none was named. Nor could it be construed as a legal execution against the land described. It did not recite that the land was wild, or that it had not been returned for taxes, or that any taxes were due thereon, nor did it set forth any facts authorizing its issuance against the property *in rem*. Hence it was fatally defective; it was a mere nullity; it was absolutely void. The execution being the sole authority for the sale, it should show such facts as will invest itself with at least *prima facie* legality. In the present instance the execution was void, and therefore the sale made and deed given by virtue thereof were void also, and the court below committed no error in sustaining the objection of defendant's counsel to the introduction in evidence of the executions and deeds, and granting a nonsuit.

*Judgment affirmed.*