## GREER v. FERGERSON.

1. Where the comptroller-general followed the scheme provided for in the act approved Feb. 28, 1874 (Acts 1874, p. 105), in regard to executions against wild lands, it was not necessary for him to recite in an execution issued under that act that the lands had been unreturned and that the taxes thereon had not been paid.

(*a*) Were it otherwise, a deed made by the sheriff, under a sale in virtue of such a fi. fa., to a purchaser who went into possession of the land and held it adversely for more than seven years, was admissible in evidence as color of title.

2. The absence of any paper or document from the records of any public office can not be shown by a certificate of the clerk or other officer in charge of such records, to the effect that such paper or document does not appear of record in his office.

Argued April 29, — Decided May 25, 1898.

Complaint for land. Before Judge Smith. Dooly superior court. September term, 1897.

The suit was by J. M. Fergerson, as sole heir at law of John Fergerson deceased, against Greer. The plaintiff introduced in evidence a plat and grant from the State to Daniel Ponder, conveying the land in dispute, and offered a deed from Daniel Ponder to Davis Smith, purporting to have been executed on Jan. 17, 1827, in Monroe county, and witnessed by William P. Henry and John Spratling, J. I. C. At a previous term the defendant had filed an affidavit of forgery to this deed, and both sides agreed that the issue of forgery should be tried with the main case. The plaintiff assumed the burden, and offered in support of the genuineness of the deed testimony to the effect that Daniel Ponder was dead, that W. P. Henry was dead, and that Spratlin had removed from the State, and it was not known whether he was alive or not; and that in the opinion of witnesses acquainted with the handwriting of Daniel Ponder, the

signature to the deed was his. The court then admitted the deed in evidence. Plaintiff then offered in evidence a chain of title from Davis Smith to John Fergerson, the father of plaintiff, covering the premises in dispute. Plaintiff testified that he was the sole heir at law of John Fergerson. It was agreed that if the plaintiff was entitled to recover, the damage was $500. Defendant offered in evidence a deed from Russel Kellam, sheriff of Dooly county, conveying the lot in dispute to the defendant; and at the same time offered the tax fi. fa., issued in printed form by the comptroller-general, under which the lot was sold for its taxes. Plaintiff objected to the fi. fa., on the ground that it did not recite on its face that the land was unreturned for taxes during the years for the taxes of which it was levied on, and did not recite that these taxes had not been paid. Defendant offered to prove by Russel Kellam that he was sheriff when the fi. fa. was issued, and that he levied it and sold the lot under the fi. fa., made the entries on the fi. fa., and returned it to the comptroller's office. The court sustained the objection, and excluded the fi. fa. and sheriff's deed. Defendant then offered in evidence a certificate of the secretary of the executive department, that after a careful examination of the records of the commissions issued to inferior court judges in the county of Monroe, filed in the executive department, he found that "Jno. Suatt, Jno. Spratlin, and Jno. Sprathlin" were not commissioned as judges of the inferior court of that county on Jan. 17, 1827, and that neither of the said parties held a commission as judge of said court on the date mentioned. This was rejected. The plaintiff introduced a certificate from the secretary of the executive department, dated Sept. 5, 1896, that Jno. Spratlin was commissioned as a justice of the inferior court of Monroe county on Jan. 25, 1825, for the term of four years, and that he held the office for four years.

The court directed a verdict for the plaintiff.

*Thomson & Whipple*, for plaintiff in error.    *Guerry & Hall*, *J. W. Haygood* and *Busbee, Crum & Busbee*, contra.

SIMMONS, C. J. The official report states the facts. From that report it appears that the land in controversy was sold in 1878

by the sheriff under a tax fi. fa., issued by the comptroller-general of the State, for taxes due for the years 1874, 1875 and 1876. The fi. fa. was issued under authority of the act approved February 28, 1874 (Acts 1874, p. 105). That act provided that "all persons owning unimproved or wild lands" in counties not the counties of their residence shall return the same to the comptroller-general if the owners are non-residents of the State, or where the owners are residents of the State, to the tax-receiver of the county of their residence; that returns of residents of the State shall be made by the first day of July in each year, and those by non-residents by the first day of August in each year. The second section of the act required all persons owning wild lands to return the same by number, district, etc. The fourth section required each receiver of tax returns to make a separate and complete digest of all the lots and parts of lots in his county which had not been returned to him and to forward a copy of the digest to the comptroller-general's office. The fifth section provided that when the several digests of the receivers of tax returns of the State should have been received by the comptroller-general, it should be his duty to compare these returns with each other and to make out a complete list, by number, section, district and county, of all unimproved and wild lands not given in for taxes. The sixth section provided that when such list was completed, the comptroller-general should for thirty days (amended by the act of 1875 to once a week for four weeks) make advertisement of the same in one newspaper at the capital of the State, and in said publication require the owner of such lands to come forward and give in said land and pay taxes thereon, and that in default, the land should be sold in the county where it lay; that a copy of the list should be furnished the clerk of the superior court and ordinary of each county in the State, who should post the same in their offices. The seventh section declared that on the expiration of the time of advertisement, the comptroller-general should issue execution against all unimproved or wild lands not returned for State and county taxes, which execution should be directed to the sheriff of the county where the land lay; and that the sheriff should then proceed to adver-

tise and sell under the same rules and regulations as govern other sheriff's sales. The scheme of the act was for the officers of the State to ascertain all the wild lands not returned for taxes, to make digests of the same, and to return those digests to the comptroller-general. When he had compared all the digests of the different counties, it was his duty to make out a list of the unreturned wild lands and send copies to the clerk and ordinary of the county where the land lay, to be posted in their offices. It was also the duty of the comptroller-general to give notice to the owners of the wild lands by publication in a newspaper, so that these owners might be put upon notice that their wild lands had not been returned nor the taxes paid thereon, and that the owners might have an opportunity of paying the taxes.

As far as appears from the record of the present case, all this was done before the comptroller-general issued the fi. fa. There is no evidence that the officer mentioned did not follow the means provided by the act for giving notice to all owners of unimproved or wild lands of the facts above recited. These proceedings were in the nature of a citation by the State authorities calling upon the owners of wild lands not returned to come forward, return the lands, and pay the taxes thereon. The law presumes that the owners of the land had the notice prescribed, for it presumes that public officers will do their duty. The owner of this particular tract, therefore, had notice that this land was unreturned and that the taxes thereon were unpaid. Not having appeared and paid the taxes as required by the statute, the comptroller-general had no discretion but was compelled to issue the execution against the land. John Fergerson, under whom plaintiff claims, died in 1852, some 26 years prior to the sale under the tax fi. fa. It is now claimed by his son and sole heir that the sale was void, because the fi. fa. did not recite that the land was unreturned for taxes and that the taxes on the land had not been paid. Upon his objection on these grounds, the trial judge rejected the fi. fa. and the deed of the sheriff when they were offered in evidence. We think that this was error, and that the fi. fa. and the sheriff's deed should have been admitted in evidence. After a careful reading of the act, we find nothing therein which requires or

authorizes a recital in the fi. fa. of the facts that the land had not been returned and that the taxes had not been paid.. The law under which the comptroller-general acted did not require these facts to be stated in the fi. fa., any more than the law requires the clerk of a court to state in a common-law execution that the defendant has not paid the debt for which the execution issues. The proceedings required by this act were in the nature of an action in rem against the land. The owner had notice of the proceedings; and if he had observed it by returning the land and paying the taxes, the execution could not have issued. The fact that the land had not been returned and that the taxes had not been paid had been ascertained by the comptroller-general in the manner pointed out by the act; and when these two facts were found by him, as an officer of the government, then, in our opinion, it was not necessary for him to recite them in the execution. We think, therefore, that the court erred in excluding the fi. fa. and sheriff's deed when offered in evidence. It is argued, however, that the decision in *Leonard* v. *Pilkington*, 99 *Ga.* 738, should control our decision in this case. This is not so. That decision was predicated upon two acts, both passed subsequently to the act of 1874 and subsequently to the issuance of this execution. The phraseology of those acts, we thought when that case was decided, required the tax-collector of the county to recite certain facts in the fi. fa., but those acts or code sections furnished the tax-collector no means of deriving information, as was supplied the comptroller-general by the act of 1874. They did not authorize the tax-collector to make lists of unreturned wild lands or to publish the same and call upon the owners to make returns and pay the taxes. Besides, the execution in the *Leonard* case was not issued against the land itself but against "the goods and chattels, lands and tenements of" the land for a certain amount "due by him [sic] for his State taxes for the year 1885." Nor did it recite that the land was wild. It is quite likely that such an execution would be void upon its face.

If, however, the foregoing views were unsound, the fi. fa. and the deed made in pursuance thereof were certainly admissible as color of title, the defendant having set up in his answer

that he had been in peaceful, adverse, and uninterrupted possession of the land for more than seven years under this title. It further appears from the record that the plaintiff in the case was not a minor, but was more than twenty-six years old when the land was sold, and more than forty-two years old when the suit was filed.

2. A deed from Ponder to Smith, offered in evidence by the plaintiff, was claimed by the defendant to be a forgery. He made the affidavit required by the code, and offered in support of his contention a certificate from one of the clerks in the executive department, that, after a careful examination of the records filed in the executive department, he found that "Jno. Suatt, Jno. Spratlin and Jno. Sprathlin were not commissioned as judges of the inferior court of Monroe Co., Ga., on Jan'y 17, 1827, and that neither of the said parties held a commission as judge of said court on the date mentioned." On objection by the plaintiff, the court excluded this certificate. There was no error in this ruling. Section 5211 of Civil Code provides that "The certificate or attestation of any public officer, either of this State or of any county thereof, shall give sufficient validity or authenticity to any copy or transcript of any record, document, paper of file, or other matter or thing in their respective offices, or pertaining thereto, to admit the same in evidence in any court of this State." Under this section it has been held that an officer can not certify to a fact. He can only certify a copy or transcript. His certificate to the non-existence on his records of certain facts is, therefore, not admissible. He can not show the absence of a particular fact from his records by a certificate to that effect; he must be sworn as any other witness. *Martin* v. *Anderson,* 21 *Ga.* 301; *Dillon* v. *Mattox,* Id. 113; *Lamar* v. *Pearre,* 90 *Ga.* 377, 381; *Walker* v. *Logan,* 75 *Ga.* 759; *Miller* v. *Reinhart,* 18 *Ga.* 239; *Hines* v. *Johnston,* 95 *Ga.* 644.

*Judgment reversed. All the Justices concurring.*