SOUTHERN PINE COMPANY OF GEORGIA *v.* KIRKLAND.

A tax-collector had, in 1884, no authority to issue an execution for taxes against wild land, unless the same had not been returned for taxation in the county in which it was located; and being a summary proceeding which was not founded on any judgment, it was essential that all necessary jurisdictional facts should appear on the face of the execution. Where, therefore, no recital was made in such an execution issued in that year that the lot against which it was issued was not returned for taxation, the execution was invalid, and a sale of the land made thereunder was void.

Submitted October 17, — Decided November 26, 1900.

Petition for injunction. Before Judge Bennet. Ware county. September 25, 1900.

This was a petition to enjoin the defendant from cutting and removing timber from certain land to which the plaintiff claimed title under a sheriff's deed made in pursuance of a sale under a wild-land tax execution; and the sole question at issue was whether the execution was valid, the defendant contending that it was void because of the absence of a recital that the land was not returned for taxation. The court refused an injunction, and the plaintiff excepted. The execution was as follows:

"State of Georgia, Ware County. To all and singular the sheriffs of Ware County, and of said State, greeting: You are hereby commanded to levy upon and sell, according to law, lot of 'wild land' number 229, district 7, of Ware County, so that you cause to be made the sum of one dollar and thirty cents, the same being State and county tax on said lot for the year 1883, with lawful cost, and have you at my office, at Waycross, Georgia, within ninety days, said sum of money, and this writ, with your actings and doings thereon. Given under my hand and official signature, this 27 day of Aug., 1884.          J. W. Mallon, T. C."

The sheriff's entry of levy stated that the land was unreturned; and affidavits showing the same fact were introduced at the hearing.

*John C. McDonald*, for plaintiff.
*Toomer & Reynolds*, for defendant.

LITTLE, J.   But a single question arises in this case for our determination, and that is whether the execution under which certain land was sold was a valid and legal writ.   If it was, the injunction sought in the court below by the plaintiff in error should have been granted.   If, however, it was void, then it would follow that the deed of conveyance, made by the sheriff by virtue of a sale under the execution, would likewise be void, and the ruling of the judge below in refusing to grant the injunction ought not in that case to be disturbed.   The execution in question was issued for the purpose of collecting taxes alleged to be due to the State, and the County of Ware, on a certain lot of wild land, by the tax-collector of the county named.   It did not issue by virtue of any judgment rendered, but was a statutory proceeding dependent for validity on the terms of the law which authorizes an execution to issue directly against land of this character, for the purpose of collecting taxes due, when the owner fails or refuses to return it for taxation.   Section 821 of the Political Code provides, that "Any wild lands, not given in for taxes in the county in which they may be, shall be subject to double tax, as other property; and it shall be the duty of the receiver of tax returns, when taxes are not paid in the time provided by law, to issue executions against said wild land, and   .   .   to sell said lands for payment of taxes."   This section was codified from the act of 1881.   Acts of 1880-1, p. 46. Subsequently the act was so amended as to require the execution to be issued by the tax-collector.   Acts 1882-3, p. 47.   It will be noted that under the statute such an execution could only legally issue against wild land which was not returned for taxation in the county in which it is situated.   Ordinarily an execution for taxes issues in personam, and it is only in the case of wild lands not returned for taxation that the statute authorizes the execution to issue against the land itself, instead of the owner.   This provision was undoubtedly enacted because of the uncertainty of ownership of wild lands in the different counties of this State.   This court has on more than one occasion been called on to decide as to the validity

of certain of these executions; to which cases we will presently refer. The point is made and insisted on, that, inasmuch as executions of this character are not founded on any judgment, it is necessary that the instrument itself should bear on its face evidence of all jurisdictional facts.   This we conceive to be the law.   Mr. Blackwell, in his treatise on the power to sell land for non-payment of taxes, vol. 1, § 126, says:   "The proceedings are adverse, ex parte, summary, executive rather than judicial, special, and statutory, and have nothing to stand upon but the statute, from which if they vary they can lay no claim to its support, and are therefore wholly without support.   The purchaser claims under the statute; by that let his pretensions be judged.   The consideration is grossly inadequate; the maxim caveat emptor applies with great force to the purchaser.   If the forms of the law can be at all departed from, a dangerous power is put in the hands of the officers, and great difficulty will be found in deciding how far departure may go.   If at all, why not to any distance ?   The officer sells what he does not own and has no interest in and no authority over except as agent of the law.   He is made agent for this purpose by certain prescribed steps, and if a single condition is absent, his agency fails."   Chief Justice Marshall in Thatcher *v.* Powell, 6 Wheat. *125, says: "That no individual or public officer can sell, and convey a good title to, the land of another, unless authorized so to do by express law, is one of those self-evident propositions to which the mind assents, without hesitation; and that the person invested with such a power must pursue with precision the course prescribed by law, or his act is invalid, is a principle which has been repeatedly recognized in this court."

Mr. Blackwell, in the same volume of his treatise to which reference has been made, § 133, says: "In tax titles, the constitutional provisions regulating the taxing power, the statute levying the tax and prescribing the manner of enforcing its collection, and the acts of those to whom the execution of the power is intrusted, are all essential links in the chain of title,—all of them are matters of record,—and the purchaser is bound to take notice of all omissions or irregularities which have taken place in the proceedings under which he claims the estate."   In the case of Weimer *v.* Bunbury, 30 Mich. 201, Judge Cooley delivered a very able and elaborate opinion on a series of questions arising under a proceed-

ing to collect taxes by a summary process, in the course of which he says: "And when summary process of this nature is issued against him, it must show on its face all the facts which are necessary to constitute a default; for nothing can be taken by intendment in favor of a proceeding like this, which is in derogation of common-law principles, and therefore must depend for its validity upon a strict conformity to the statute." And in McClung v. Ross, 5 Wheat. 116, the general principle is announced that "in these summary proceedings every fact which is necessary to give jurisdiction ought to appear in the record of the court." To the same effect see 32 Ill. 192; 20 Ill. 286; 21 Ind. 74; 11 N. J. L. 196. Our own court in the case of *Leonard* v. *Pilkinton,* 99 *Ga.* 738, in dealing with an execution issued under the provisions of the code in relation to tax executions against wild lands, says, "From this statute it will be noted that the power of the tax-collectors of this State to issue executions against wild and unimproved land, for the non-payment of taxes due thereon by the owner, is dependent upon a non-return of such lands for taxes, because it expressly limits such power to 'wild lands not given in for taxes;' and it is therefore essential to the exercise of this power, and to the validity of the title of a purchaser of such land, acquired at a sale under and by virtue of an execution so issued, that it appear from the recitals in the execution, not only that the land against which the same was issued was wild and unimproved, but that it was likewise unreturned for taxes by the owner." The ruling in this case would seem to settle the question now under consideration adversely to the claim of the plaintiff in error. The case of *Greer* v. *Fergerson,* 104 *Ga.* 552, can not be said to rule to the contrary. In that case the tax execution was issued by the comptroller-general under the act of 1874, and in his able opinion Chief Justice Simmons draws a distinction between a wild-land tax execution issued by the comptroller-general under the act of 1874 and one issued by the tax-collector under the provisions of the code to which we have before referred, and confines the ruling made in that case to executions issued by the comptroller-general, and expressly refers to the case of *Leonard* v. *Pilkinton* as the law governing in the case of a tax execution issued by a tax-collector. And this distinction was further pointed out by Mr. Justice Lewis in the case of *Hilton* v. *Singletary,* 107 *Ga.* 821. See also *Bentley*

v. *Shingler*, 111 *Ga.* 780.   In the case at bar the execution does designate the land against which it issued as wild land, but no recital on the face of the execution is made to the effect that the land against which it issued was not returned for taxation.   As we have seen, this is necessary to give the execution validity, because it could only issue against a lot of wild land which had not been returned for taxation.   This is the plain requirement of the statute; and inasmuch as such recital is not made, the execution must be held to be invalid and a sale of land made under it void.

*Judgment affirmed.   All the Justices concurring.*