## B. F. ASBELL v. A. F. EDWARDS.

No. 12,378. (66 Pac. 641.)

SYLLABUS BY THE COURT.

1. TEXAS FEVER—*Seizure of Cattle by Sheriff.* A sheriff acting under section 7091, General Statutes of 1899 (Gen. Stat. 1901, § 7439), being a portion of the act for the protection of cattle against Texas fever, can seize and quarantine cattle only on a "complaint" made to him that such cattle are capable of communicating, or liable to impart, fever, and a communication addressed to him which merely informs him that the live-stock sanitary commission requests him to quarantine certain cattle is not a complaint, and does not constitute a justification to him, when sued in replevin for the cattle.

2. ―――― *Jurisdiction of Live-stock Sanitary Commission.* The live-stock sanitary commission is a body of special and limited jurisdiction, and in the quarantining of cattle to prevent the spread of disease is authorized to proceed in a summary manner, and not according to the ordinary course of judicial procedure. Its acts, therefore, are to be confined strictly within the limits of

the jurisdiction conferred; and when the record of its proceedings ordering the quarantining of cattle fails to show the existence of the facts which alone will authorize the making of the order, such order does not constitute a justification for any action taken under it.

Error from Labette district court; A. H. SKIDMORE, judge.   Opinion filed November 9, 1901.   Division two.   Reversed.

*Nelson Case*, for plaintiff in error.

*W. S. Hyatt*, for defendant in error.

The opinion of the court was delivered by

DOSTER, C. J.: This was an action of replevin of cattle and for damages for their detention. The defense was that the defendant was the sheriff of the county, and that he first took and detained the cattle under the live-stock quarantine laws of the state, by virtue of a complaint made to him that the animals were believed to be capable of communicating, or liable to impart, Texas fever, and that he subsequently continued the detention under an order of the live-stock sanitary commission, made in pursuance of the said quarantine laws. Judgment went against the plaintiff, to reverse which he has prosecuted error to this court.

The statute under which the defendant, the sheriff, assumed first to take and hold the cattle is section 7091, General Statutes of 1899, which reads as follows :

"It shall be the duty of any sheriff, under-sheriff, deputy sheriff or constable within this state, upon complaint made to him by any citizen of the state, or otherwise having notice or knowledge that there are within the county where such officer resides cattle believed to be capable of communicating or liable to im-

part the disease known as Texas, splenic or Spanish fever, to forthwith take charge and restrain such cattle under such temporary quarantine regulations as will prevent the communication of such disease, and make immediate report thereof to the live-stock sanitary commission; and such officer shall keep said cattle in custody as aforesaid until released by order of said live-stock sanitary commission.

In assumed compliance with this statute, one Mc-Cunningham presented to the sheriff the following paper:

"U. S. DEPARTMENT OF AGRICULTURE.
BUREAU OF ANIMAL INDUSTRY.
LOCAL OFFICE.

"COFFEYVILLE, KAN., October 11, 1898.

"*To the Sheriff or any Deputy Sheriff of Labette County, Kansas:*

"By the authority of the live-stock sanitary commission of Kansas, you are requested to quarantine the premises of B. F. Asbell, in township 34, range 21, Labette county, Kansas, together with all cattle thereon. Yours truly,     DAN. McCUNNINGHAM,
*Live-stock Agent in B. of A. I.*"

Upon receipt of this paper the sheriff seized and quarantined the plaintiff's cattle, and in the action subsequently brought against him relied on it as a justification, so far as the seizure and the earlier period of detention of the animals were concerned.

The statute above quoted seems to authorize the quarantining of cattle by a sheriff upon complaint made to him by a citizen that such cattle are capable of communicating or liable to communicate fever, and likewise seems to authorize such action if the officer otherwise has notice or knowledge of cattle capable of communicating or liable to communicate fever. In this case the sheriff justified on the paper, and not on his knowledge or on notice otherwise received; hence we are concerned only with the validity of the communi-

1. Insufficient justification by sheriff.

cation on which he acted.   In our judgment, the communication constituted no justification to him.   The statute authorizes the sheriff to act only upon complaint made to him, and the paper quoted is not a complaint.   A complaint is "a form of legal process which consists of a formal allegation or charge against a party, made or presented to the appropriate court or officer, as for a wrong done or a crime committed." (*State v. Dodge County*, 20 Neb. 595, 31 N. W. 117.) The term "complaint" is not always limited to charges of crime or wrong, and it may be that, as used in some statutes, it comprehends oral as well as written allegations, but, whenever used, it means the making of a statement of fact as the basis for the taking of legal action.   The communication to the sheriff in this case did not contain any statement of fact whatever.   It did not inform that officer that the plaintiff's cattle were capable of communicating or were liable to impart fever.   It was a mere notification that, by the authority of the live-stock sanitary commission, he, the sheriff, was requested to quarantine the plaintiff's cattle.   This could not legally suffice to invoke the action of that officer.   The statute is a very summary one.   It authorizes the arbitrary seizure and detention of the citizen's property, without trial of the rightfulness of such action, and provisions immediately following the one above quoted charge upon the property impounded a lien for the expense of withholding it from the owner.   The inflexible rule is that such statutes are to be strictly construed and the power conferred to be nowise exceeded.   The authorities hereafter cited in support of the next proposition also support this.

The defendant, after holding the cattle in quarantine for several days, received, and thereafter acted

under, the following paper as his authority for continuing the detention of the animals :

"John Bryden, Chairman,
Eureka, Kan.
Taylor Riddle, Secretary,
Marion, Kan.
J. B. Beal,
Grainfield, Kan.

STATE OF KANSAS.
OFFICE OF
LIVE-STOCK SANITARY COMMISSION.

"COFFEYVILLE, KAN., October 21, 1898.

"WHEREAS, The sheriff of Labette county did, on the 11th day of October, A. D. 1898, temporarily quarantine, because of the alleged infection of Texas fever, the cattle and premises of B. F. Asbell, situated in Richland township, the same being the east half of section 18 and northwest quarter section 17, township 34 south, of range 21 east, in Labette county, Kansas ; and said sheriff having duly notified this commission of said quarantine and infection, and this commission having examined into the matter : now, therefore,

"*To A. F. Edwards, Sheriff of said County, greeting :* You are hereby ordered by this commission to hold in safe quarantine all the cattle and the premises of B. F. Asbell, here above mentioned, in Labette county, Kansas, and to allow no cattle to be taken from said premises. And you are further ordered to notify the said Asbell in writing of this quarantine, and also post notices thereof warning the said Asbell, and all others, not to violate this order, under the penalties of the law.              J. B. BEAL,
*Member Live-stock Sanitary Commission.*"

Neither upon oral argument nor in printed brief was any specific statutory authority for the issuance of the above precept pointed out. There are, perhaps, three sections under which a claim of authority to issue it may be made. They are as follows :

"Whenever the live-stock sanitary commission shall determine that certain cattle within the state are capable of communicating or liable of imparting Texas, splenic or Spanish fever, they shall issue their order to the sheriff or any constable of the county in which said cattle are found, commanding him to take and

keep such cattle in his custody, subject to such quarantine regulations as they may prescribe." (Gen. Stat. 1899, § 7092; Gen. Stat. 1901, § 7421.)

". . . It shall be the duty of any member of said commission, upon receipt by him of reliable information of the existence among the domestic animals of the state of any malignant disease, to go at once to the place where any such disease is alleged to exist and make a careful examination of the animals believed to be affected with any such disease and ascertain if possible what if any disease exists among the live-stock reported to be affected, and whether the same is contagious or infectious, or not; and if such disease is found to be of a malignant contagious or infectious character, he shall direct the temporary quarantine and sanitary regulations necessary to prevent the spread of any such disease." (Gen. Stat. 1899, § 7117; Gen. Stat. 1901, § 7430.)

"If the member of the commission examining the place where such disease is supposed to exist shall be of the opinion that the exigencies of the case require, he shall immediately convene the commission at such place as he may designate; and if upon consideration of his report the commission shall be satisfied that any contagious or infectious disease exist of a malignant character, which seriously threatens the health of domestic animals, they shall proceed at once to the infected district, ascertain and determine the premises or grounds infected, and establish the quarantine, sanitary and police regulations necessary to circumscribe and exterminate such disease." (Gen. Stat. 1899, § 7118; Gen. Stat. 1901, § 7431.)

Without taking into account the fact that the above-quoted order to the sheriff was attested by only one member of the live-stock sanitary commission, but regarding it as the act of the whole body and not of the individual member, or assuming, as perhaps may be rightfully done under section 7117 (Gen. Stat. 1901, § 7430), *supra*, that one member alone is competent to act, the order yet lacked an essential recital to

show the rightfulness of its issuance.   It failed to re-
cite that fact which must of necessity have been found
to justify the action taken.   It failed to recite that
the plaintiff's cattle were "capable of communicating
or liable of imparting fever," as must have been
found under section 7092 (Gen. Stat. 1901, § 7421),
*supra*.   It failed to recite that such disease was found
to be of "a malignant, contagious or infectious
character," as must have been found under section
7117 (Gen. Stat. 1901, § 7430), *supra;* and it failed
to recite that "a contagious or infectious disease ex-
ist of a malignant character," as must have been
found under section 7118 (Gen. Stat. 1901, § 7431),
*supra*.

The live-stock sanitary commission, although not a
court, is nevertheless invested with powers judicial in
character.   The duty of determining, by investigation
of the facts, whether a man's property shall be seized
and withheld from him is essentially
judicial.   The power to make this deter-
mination is conferred on an inferior tri-
bunal : one proceeding in a most summary manner, and
not according to the course of the common-law.   The
unquestioned rule in such cases is that rightfulness or
regularity of action in acquiring jurisdiction will not
be presumed, but all such must affirmatively appear
on the face of the proceedings, else the record of such
proceedings will not constitute a defense against col-
lateral attack.   (1 Bailey, Juris. § 129, *et seq*.)   In *Rex
v. Croke*, 1 Cowp. 26, it was ruled by Lord Mansfield
that "where, by statute, a specific authority is dele-
gated to particular persons, affecting the property of
individuals, it must be strictly pursued ; and appear
to be so upon the face of their proceedings."   In that
case a land-condemnation proceeding was held to be

2. Jurisdiction of
live-stock sani-
tary commission.

invalid because the proper tribunal had not first recorded an opinion that the land was necessary for the public purpose, or that an application had been first made to the tribunal to exercise its powers, both of which were statutory requirements.

In Missouri it was held:

"The method of procedure for ascertaining damages done the owner by taking material from his land for the construction of a railroad is a summary one, and must be strictly pursued, and every essential prerequisite called for by the statute must affirmatively appear on the face of the proceedings in order to give them validity. Thus the failure of parties to agree as to the value of the material taken is a jurisdictional fact, necessary to empower the justice to appoint householders to ascertain the damages, etc., as in the above section provided; and in suit upon the award, made by the appraisers, the failure of the record of the justice to recite such non-agreement is an omission fatal to recovery; and it is an omission, also, which parol evidence cannot supply." (*Cunningham et al. v. The Pacific R. R.*, 61 Mo. 33.)

In Mississippi, to an action of trespass for breaking and entering the plaintiff's close, the defendant pleaded the existence of a public highway where the alleged trespass was committed. The court rejected the record of proceedings laying out the highway because, although the proper tribunal, the county court, had ordered it laid out, yet the record failed to show that the road-viewers had reported in favor of its establishment. It was accordingly ruled:

"Where a court has no jurisdiction over the subject-matter, or where an inferior court has jurisdiction over the subject-matter, but is bound to adopt certain forms in its proceedings, from which it deviates, the proceedings, in either case, are *coram non judice*, and constitute no justification in an action of

trespass. The county court is an inferior tribunal, and if it steps beyond the limits of its jurisdiction or power, its acts are absolutely void, and may be so regarded in an action of trespass, though not arrested by appeal or certiorari. The defects of the proceedings of the county court cannot be supplied by parole testimony. Their proceedings must be recorded and can be proved only by the record." (*Samuel Stockett v. James Nicholson*, Walk. [Miss.] 75.)

In California, the foundation of a claim of title to land was a sale made in pursuance of a default judgment rendered by a justice of the peace. In an ejectment, the record of the proceedings before the justice was rejected, because it did not affirmatively appear therefrom that the action was brought in the proper township. (*Lowe v. Alexander*, 15 Cal. 296.) In many other cases, both of direct and collateral attack, it has been held that when by statute a summary power to sequester the citizen's property, or otherwise restrict his personal rights, is conferred on a court or body of special and limited jurisdiction, the power must be strictly pursued, and the record must affirmatively show that all necessary steps to the acquisition of the jurisdiction were taken. (*Proctor v. The State*, 5 Harr. [Del.] 387; *Martin v. McKinney*, Sneed [Ky.] 321; *City of Chicago v. R. I. R'y Co.*, 20 Ill. 286; *Pettus, Administrator, v. McClannahan*, 52 Ala. 55.)

In the case of courts of general jurisdiction, the general grant of power confers a competency of constitution to decide on the extent of their authority, and to exercise it to final judgment; therefore, the rightfulness of the exercise of the authority in a particular case will be presumed from the grant without a record recital of the facts. On the other hand, courts of special jurisdiction, being limited to the exercise of the power specially conferred, must be, there-

fore, subject to supervisory examination, to determine from the record made by them whether the jurisdic-, tion allowed has been more than specially exercised— that is, has been exceeded.

The former holdings of this court have been in ac-cord with the general rule as we have stated it. The case of *Oliphant v. Comm'rs of Atchison Co.*, 18 Kan. 386, was a collateral attack on the proceedings of the board of commissioners in establishing a highway. The record of the proceedings did not show that the petitioners for the highway were householders, which the statute requires they shall be. Among other things, it was said :

"There is no presumption in favor of tribunals of limited and special jurisdiction of the existence of facts outside of those named in the record. A party asserting their existence must prove them, or the case will stand as though they did not exist.

"A petition, signed by at least twelve householders, is a condition precedent to the exercise of any author-ity on the part of the commissioners under the roads-and-highways act. Its existence is a jurisdictional fact. If the record upon its face fails to show affirma-tively the existence of this fact, the proceedings will, when attacked directly by petition in error, be held void. If attacked collaterally, as in this case, doubt-less the fact that the petitioners were householders, and residing in the vicinity of the road, might be proved by evidence *aliunde* the record; ( *Willis v. Sproule*, 13 Kan. 257, 264, and cases there cited ;) but if not thus proved, and the record does not disclose the fact, the proceedings must be held void."

Whether in this case it would have been competent for the defendant to prove *aliunde* the record the un-recited jurisdictional fact, to wit, a finding of the ex-istence of disease among the plaintiff's cattle, or a finding that they were capable of communicating or

liable to communicate disease, we need not inquire. In *Oliphant v. Comm'rs of Atchison Co.*, supra, such character of proof seems to have been thought permissible. It is doubtful whether the question was before the court for decision in that case or in the earlier one to which reference was made. We assume that the record in this case does not raise it because counsel have made no reference to it. The defendant below, the defendant in error here, rested on the papers hereinbefore quoted. Those papers are insufficient as bases upon which to predicate a defense, because they failed to recite those facts which alone can justify the action taken.

The constitutional validity of those provisions of the statute hereinbefore cited, which authorize the seizure of cattle upon the suspicion of their infected or diseased condition, and which authorize their detention in quarantine upon the same suspicion, and at the owner's expense, and without the allowance of a trial to him, has been raised and discussed by counsel, and some cases bearing on the question have been cited to us. (*Miller v. Horton*, 152 Mass. 540, 26 N. E. 100, 10 L. R. A. 116, 23 Am. St. Rep. 850; *Train v. Boston Disinfecting Co.*, 144 Mass. 523, 11 N. E. 929, 5 Am. Rep. 113; *City of Salem v. Eastern Railroad Company*, 98 Mass. 431, 96 Am. Dec. 650; *Raymond v. Fish*, 51 Conn. 80, 50 Am. Rep. 3; *Mugler v. Kansas*, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205.) The case being determinable for plaintiff in error on grounds other than the claimed invalidity of the statute, we have not deemed it necessary to give thought to that matter.

The judgment of the court below is reversed and a new trial ordered.

CUNNINGHAM, POLLOCK, JJ., concurring.