U. S. SLICING MACH. CO. v. WOLF, SAYER & HELLER, Inc.

(District Court, N. D. Illinois, E. D. June 13, 1917.)

No. 507.

1. EVIDENCE ⬡⟫334(1)—DOCUMENTARY EVIDENCE—PUBLIC RECORDS.

The certificate of an assistant registrar under the English Companies Act that a corporation had changed its name in due form by law is not legal evidence of such fact, which can only be shown by a duly authenticated copy of the record itself.

2. PATENTS ⬡⟫328—VALIDITY AND INFRINGEMENT—SHARPENER FOR MEAT-SLICING KNIVES.

The Stukart patent, No. 1,039,210, for a grinding apparatus for meat-slicing knives, held not infringed.

3. PATENTS ⬡⟫235—INFRINGEMENT—DEVICE CAPABLE OF INFRINGING USE.

The rule that a device capable of infringement infringes, although designed to be used in such manner as not to infringe, does not apply, where there is no object in so using it as to infringe, but rather a disadvantage.

In Equity. Suit by the U. S. Slicing Machine Company against Wolf, Sayer & Heller, Incorporated. On final hearing. Decree for defendant.

Brown, Nissen & Sprinkle, of Chicago, Ill. (Frank T. Brown and A. J. Crane, both of Chicago, Ill., of counsel), for plaintiff.

Max W. Zabel, of Chicago, Ill. (Sydney Stein, of Chicago, Ill., of counsel), for defendant.

SANBORN, District Judge. This case is entirely separate from the ones just considered relating to the rind-remover, although pertaining to the same machine. Three patents are involved: Van Berkel, 806,-603; Van Berkel, 895,213; and Stukart, 1,039,210.

[1] *Title to the Van Berkel Patents.* In respect to the two Van Berkel patents, a question of title is raised by defendant, and in view of its fundamental importance should be first considered. The chain of title is: (1) Van Berkel to an English corporation, called Van Berkel's Slicing Machine Manufacturing Company, Limited; and (2) Berkel & Parnall's Slicing Machine Manufacturing Company, Limited, to U. S. Slicing Machine Company, plaintiff here. The missing link between the two Van Berkel Companies is sought to be supplied by a

certificate under the English Companies Consolidation Act of 1908, reading as follows:

"Certificate of the Incorporation of a Company.

"Companies" Registration Office, 30 Mar., 1914.

"I hereby certify that Berkel & Parnall's Slicing Machine Manufacturing Company limited (originally called Van Berkel's Slicing Machine Manufacturing Company, Limited), and which name was changed by special resolution and with the authority of the Board of Trade on the twenty-ninth day of October, one thousand nine hundred and nine, was incorporated under the Companies Acts, 1862 to 1907, as a limited company, on the 9th day of September, one thousand nine hundred and eight.

"Given under my hand at London, this thirtieth day of March, one thousand nine hundred and fourteen. Geo. J. Sargent,

"Assistant Registrar of Joint Stock Companies."

The instrument is properly authenticated as to the official character of the assistant registrar who signs it. This paper is neither an assignment of any interest in a patent nor a copy of the incorporation certificate or of the resolution changing the corporate name. It is not, therefore, within section 4898 of the Revised Statutes (Comp. St. 1916, § 9444) relating to patent assignments. Nor is it within any common-law rule or equity rule of documentary evidence. The general governing rule is that the official certification of a fact drawn or gathered from a public record is a mere legal conclusion, or the opinion of the certifying officer, and so not admissible as evidence. He should copy the record verbatim, certifying that he has done so, and that the copy is an accurate transcript of the original. Wigmore, §§ 2162, 2165; Mandel v. Swan Land Co., 154 Ill. 177, 40 N. E. 462, 27 L. R. A. 313, 45 Am. St. Rep. 124; People ex rel. v. Lee, 112 Ill. 113, 1 N. E. 471; Greer v. Ferguson, 104 Ga. 552, 30 S. E. 943; Hudkins v. Bush, 69 W. Va. 194, 71 S. E. 106, Ann. Cas. 1913A, 533.

While the question is largely technical, and I would much prefer to ignore the objection, I cannot see any way out of it but to decide that the suit must fail as to the two Van Berkel patents for want of proof of title in the plaintiff, without prejudice to another action, if plaintiff shall be so advised.

[2] *The Stukart Patent for the Sharpener.* This leaves for consideration only the sharpener patent; some 10,000 machines equipped with this device having been sold by plaintiff. The application was filed June 12, 1912, and the patent issued September 24, 1912. So no question of laches in bringing suit applies to this patent, though it was raised as to the two other suits.

The invention relates to a device consisting of two small circular whetstones arranged above the circular knife, and is thus described by counsel for plaintiff:

"This patent covers a special grinding apparatus particularly adapted to properly sharpen the concavo-convex revolving knife of a meat-slicing machine. In order to properly sharpen the concavo-convex knife, it should be so ground that there will be no flat surface on the concave side next the meat, and in shop practice, according to expert testimony, a concavo-convex knife is designated as a 'relieved cutter.' In the meat-slicing art, the flat side of the knife is 'relieved' by being cut in a concave form, so that with this relieved flat side of the knife, or concave side, there is no possibility of an ex-

tensive flat surface dragging against the meat, and causing great friction, and interfering with the accuracy of the slicing operation. When it comes to sharpening such a knife, it obviously would not do to sharpen it upon its relieved or concave face, because the tendency would in such case be to form a flat surface, or even perhaps an angular surface, and that would interfere with the complete relief of that side of the knife, and make it drag against the meat. The inventor contemplates sharpening this concavo-convex or relieved knife by grinding it on its convex surface to a considerable extent, and then simply taking off the burr and on the relieved or concave side, which latter requires, of course, much less time for grinding. This is effected in the Stukart patent in suit by bringing the grinders into action successively, as distinguished from simultaneously. That is to say, on the convex side the grinder is brought in immediately and operated for some time before the grinder on the concave or relieved side is applied, and finally the latter is applied just long enough to take off the burr."

Defendant relies mainly on the claim of noninfringement. It uses a device comprising the two grinders, both mounted on a rotating plate. The latter is swung by a lever which is designed to stop in two positions. In one position both sharpeners are away from the knife, and in the other stop position, which is provided, both sharpeners are in their proper position in engagement with the knife. On the grinder which operates on the convex side of the knife a strong spring is used, and on the other a weak spring, thus obtaining the same result by a simultaneous operation of the grinders as Stukart gets by his independent or successive movement.

[3] It is, however, apparent from actual inspection of defendant's machine in evidence, and also one of its machines which was viewed in a meat market in the city where the case was heard (nor is it disputed by the defendant), that the grinders can be operated successively. Although the construction is obviously intended to be used with both grinders at work, yet it is not at all difficult to operate them one after another; and plaintiff cites the well-known rule, so often applied by the courts, that a device capable of infringement makes the defendant liable, even though designed to be used in such a manner as not to infringe. Many dealers in automobile tire chains sought to get around the patent by providing snaps or chains to prevent the chain from traveling around the tire, and positive instructions were sent out with every set of chains that they were to be used only in this way. All such attempts to escape the patent were restrained. H. Channon & Co. v. Parsons Non-Skid Co., Ltd., 203 Fed. 862, 122 C. C. A. 173.

However, this is a different situation. Defendant has no object in so using its device as to make the grinders engage one after the other. It is more difficult to operate the machine in that way. Another way is obviously contemplated, and it is clear that no actual infringement occurs in the use of the machine, because it would be entirely useless. If the successive movement were an advantageous one, infringement would be clear; but, as there is nothing to be gained by so operating the machine, there is no substantial infringement. In the tire chain cases there was an enormous advantage in leaving off the binding snaps, because the tire is seriously injured if the chain is not allowed to travel around it. A similar situation appears in both the decisions cited by plaintiff. Marconi Wireless T. Co. v. De Forest, etc., Co.

(D. C.) 225 Fed. 65; Wright v. Herring-Curtiss Co., 211 Fed. 654, 128 C. C. A. 158.

The bill should be dismissed, with costs, but without prejudice as to the two Van Berkel patents.