## BENNETT *et al. v.* SOUTHERN PINE COMPANY *et al.*

1. While under the law of this State, where property is sold for taxes, the officer making the sale executes a deed to the purchaser before the time for redemption has lapsed, yet the title acquired by such purchaser is not a perfect fee-simple title, but an inchoate or defeasible title, subject to the right of the owner to redeem within the time prescribed by the statute.

2. Although such a tax deed may be recorded, and on its face may contain no reference to the right of redemption, the public law of this State gives notice to all persons dealing with such title of the existence of that right, and of the nature and character of the title conveyed by the deed.

3. Under the act of 1874 an execution issued by the comptroller-general against a lot of wild land, for unpaid taxes due upon it, was somewhat in the nature of a proceeding in rem.

4. Where a lot of wild land was sold and the deed made to the purchaser and placed upon record, but during the time allowed for redemption the owner paid to the purchaser the proper amount, and redeemed the land and received the tax deed into his possession, but took no reconveyance, and after the lapse of the redemption period the purchaser conveyed the land to a third person for value, the latter would not acquire a title superior to that of the owner who had in fact redeemed, although he bought without notice that the redemption had taken place.

Argued June 21, — Decided August 2, 1905.

Equitable petition.    Before Judge Parker.    Ware superior court.    January 3, 1905.

The Southern Pine Company of Georgia and J. L. Crawley filed their equitable petition against B. A. and C. O. Bennett, seeking to obtain an injunction against the defendants to prevent them from cutting timber, for the purpose of making cross-ties, on certain land. The corporation claimed to be the owner, and Crawley to have a lease to the land from it, for the purpose of cutting cross-ties, and also for making turpentine. The chain of title under which the plaintiffs claimed was as follows: A fi. fa. issued by the comptroller-general against the lot of land as wild land, for State and county taxes due thereon for the year 1875, with costs, dated October 16, 1877, together with a levy of the sheriff, dated April 2, 1878, and a memorandum

showing a sale to R. B. Reppard, June 4, 1878; a deed from the
sheriff to Reppard, dated June 5, 1878; a deed from Reppard
to the Reppard Land, Lumber and Sawmill Company, dated July
18, 1883, including this and other lands, for a valuable consid-
eration; a decree from the superior court of Chatham county,
in the case of Talmadge et al., trustees, against the Reppard
Land, Lumber and Sawmill Company, ordering a sale of the land
and other property of the defendant; a report of the commis-
sioners, and a judgment confirming the sale; a deed from the.
commissioners to Talmadge; a deed from the Reppard company
to Talmadge, for the purpose of confirming and approving the
sale and perfecting the title; a deed from Talmadge to the
plaintiff company, and leases from it to Crawley. The defend-
ants denied that the plaintiff company was the owner of the.
land, or that the plaintiffs were entitled to the injunction. They
set up the following defense: The land was granted by the
State to Hiram Sears in 1848, and was sold and conveyed by
him to Dennis Paulk in 1872. Paulk regularly made his tax
returns of the land, but through an error of the receiver of tax
returns the lot was sold by the sheriff in 1878 as being in
default, and was bid in by Reppard for $14. The deed made.
by the sheriff was duly executed, delivered, and recorded. Soon
thereafter Paulk, having heard of the sale, proceeded within the
time allowed by law to redeem the land, and for that purpose
paid to Reppard the amount of his bid together with interest
and costs. Reppard thereupon delivered to him the sheriff's deed,
but neglected to make any transfer thereof in writing. Paulk
held the deed during his lifetime, claimed the lot as his prop-
erty, returned it for taxes, and paid them. He died in 1899,
leaving his wife and daughter as his sole heirs. The daughter
died, leaving her husband surviving her. The land was con-
veyed by deeds from the widow Paulk as to one-half interest,
and by the husband of the deceased daughter as her executor
or administrator as to the other half interest, under an order
from the ordinary, to the Downing Company. The defendants
acquired the right to cut the timber under that company.
Paulk claimed the land continuously, and the representatives
of his estate likewise did so, and several years ago for a period
of three years or more certain persons boxed the timber on the

lot and worked on the land for turpentine purposes openly and notoriously, and without any interference, acting under the authority of Paulk.

On motion the court struck that portion of the answer setting up the defense just stated. This ruling is assigned as error. After the introduction of evidence the court directed a verdict in favor of the plaintiffs. The defendants moved for a new trial, which was refused, and they excepted.

*J. L. Sweat,* for plaintiffs in error. *J. C. McDonald,* contra.

LUMPKIN, J. (After stating the facts.) Certain allegations of the defendant's answer were stricken on motion. One of them was, that the owner of the land in dispute had regularly returned and paid taxes on it, "but that through an error of the receiver of tax returns said lot was sold in the year 1878, as being in default." There is no law, and it is hardly conceivable that there could be one, which would authorize a sale of land for taxes if they had been regularly returned and the taxes paid. Such a sale would be without authority and would convey no title. This particular allegation, however, is not referred to in the briefs. The argument before this court rested on one question: If, while unoccupied, wild land was properly sold for taxes, and the deed recorded, and after the lapse of the period for redemption the purchaser conveyed the land to another for value and without notice of the redemption having taken place, but in fact, within the time allowed by law for that purpose, the owner had redeemed it, but took no reconveyance from the purchaser, merely receiving possession of the tax deed from him, would the title of the vendee of the purchaser at the tax sale, or that of the original owner or his heirs (he having died), prevail? The presiding judge struck a portion of the answer setting up such redemption, on the ground that it did not appear that the subsequent vendee of the purchaser at the tax sale, or those holding under him, had any notice of the redemption. The plaintiffs claimed by regular conveyances under the purchaser at the tax sale. The defendants claimed by conveyances under the heirs of the original owner of the land.

Tax sales are creatures of statute. When, how, and under what circumstances they are to be made, and their effect when made, are matters depending upon the statute governing them.

The decisions of the courts of other States throw more or less light on the case according to whether such States have similar or dissimilar statutes. In many States a deed is not made to the purchaser at a tax sale until the time for redemption has elapsed, and is then made in such manner or upon such procedure as the statute prescribes. In some, certificates of sale are issued to the purchaser to be held until the time allowed for redemption has expired, and if no redemption is made, a deed is then executed. 2 Cooley on Taxation (3d ed.), 982, et seq. In Georgia a deed is made at once by the selling officer, but the owner may redeem within the time fixed by law. In regard to the right of redemption from tax sales it has been said: "The statutes which give the right are to be regarded favorably and construed with liberality. . . But though the statutes are to be construed favorably, yet as the right depends upon them, the person seeking to redeem must bring himself within their provisions." 2 Cooley on Taxation (3d ed.), 1023, 1025. As between the purchaser at a tax sale and the person whose property is sold, the redemption extinguishes the title, and the land is restored as it was before the sale. 2 Cooley on Taxation (3d ed.), 1051, 1052; Black on Tax Titles (2d ed.), §§ 377, 448. If the purchaser at a tax sale, within the time allowed for redemption, and for the consideration of the redemption money, makes to the owner a deed of reconveyance, it creates no new title, but simply restores the property to the same position in which it was before the sale. See authorities just cited, and also *Ivey* v. *Griffin,* 94 *Ga.* 689; *Morrison* v. *Whiteside,* 116 *Ga.* 459. In *Bourquin* v. *Bourquin,* 120 *Ga.* 115, 119, 120, Mr. Justice Lamar, after referring to the effect of a tender of payment upon a security for a debt, says: "The same principle is applicable to a tender made by the owner for the purpose of redeeming from a tax sale, under the Political Code, § 909. Thereafter the purchaser's inchoate, qualified, or defeasible estate terminates." In *McCalla* v. *Clark,* 55 *Ga.* 53, it was said: "Tender of the debt on the day it becomes due terminates the creditor's right to retain possession of a pledge held as collateral security; and it is an immediate conversion for him to refuse the tender, and retain the pledge on a claim of title based upon an alleged forfeiture for delay to make payment." In *Legro* v. *Lord,* 10 Mo. 161, it was said: "A legal tender, within the time pre-

scribed by law, of the amount for which an equity of redemption is held under an execution sale, is sufficient to revest the property without a deed of conveyance to the purchaser." In Burns *v*. Ledbetter, 54 Tex. 374, it was said: "A tender to the purchaser at tax sale, under the 3rd section of the act of June 2, 1873, concerning taxes, [of] the full amount of the purchase-money paid for land at such sale, within twelve months, with one year's interest on the same, at the rate of twenty-five per cent. per annum, worked *ipso facto* an immediate redemption of the land by the original owner, and left the purchaser at tax sale without title." In the report of this case it appears that a deed had been made to the purchaser. See p. 377. See also Bénder *v*. Bean (Ark.), 12 S. W. 180.

The Political Code, § 913, declares: "The deed or bill of sale made by such officer shall be just as valid to the purchaser as if made under the ordinary process of law issuing from the superior court." Under this section recitals in such a deed in regard to the conduct of the selling officer, and of the levying officer, with respect to advertisements and the like, are presumptively correct. *Livingston* v. *Hudson*, 85 *Ga*. 735. And it has been held that "A purchaser at a tax sale duly made under legal levy, who is neither implicated in nor aware of any fraud contemplated by the selling officer, is not affected thereby." *Boyd* v. *Wilson*, 86 *Ga*. 379. But this section of the code is to be construed with other laws in reference to tax sales and redemptions. It does not confer an absolute and perfect title at once upon the purchaser; but a title subject to be defeated by the exercise of the right of redemption. The owners of wild lands sold for taxes were allowed the privilege of redeeming them at any time within one year from the date of sale, by the act of 1874. Acts 1874, p. 106. This time was extended to two years by the act of 1881. Acts 1880–1, p. 46, Political Code, § 910. The title obtained by the purchaser at a tax sale has been sometimes referred to as an inchoate, qualified, or defeasible estate. *Bourquin* v. *Bourquin*, 120 *Ga*. 120. He is not entitled to possession, or to rents, issues, and profits during the time allowed for redemption. *Jones* v. *Johnson*, 60 *Ga*. 260; *Elrod* v. *Groves*, 116 *Ga*. 468. The nature of the title which he has may be compared to an estate which will ripen upon a condition, or rather perhaps to one which will be defeated

upon the happening of a condition.    In either event it is not a perfect title, but one subject to the right of redemption.    Under the act of 1874 it was not required that the execution issued by the comptroller-general for unpaid taxes on wild lands should recite in it that the lands had been unreturned, and that the taxes thereon had not been paid.    *Greer* v. *Fergerson*, 104 *Ga.* 552; *Bentley* v. *Shingler*, 111 *Ga.* 780.    Under the act of 1881 (Political Code, § 821), amended by the act of 1882 (Acts 1882–3, p. 47), an execution issued by a tax-collector must recite that the lot against which the execution issued was not returned for taxation.    *Southern Pine Co.* v. *Kirkland*, 112 *Ga.* 216; *Leonard* v. *Pilkinton*, 99 *Ga.* 738.

It is contended, that, under the registry laws of this State, the record of the tax deed gave notice of a title in the purchaser; that, no reconveyance having been made by him, and nothing appearing of record to show that redemption had taken place, one who bought from him without notice of a redemption would acquire a perfect title; and that to defeat the title of such a vendee it was necessary to have alleged and proved notice.    Section 3618 of the Civil Code is as follows:    " Every deed conveying lands shall be recorded in the office of the clerk of the superior court of the county where the land lies.    The record may be made at any time, but such deed loses its priority over a subsequent recorded deed from the same vendor, taken without notice of the existence of the first."    It is true that a purchaser in good faith and without notice acquires title as against a prior unrecorded conveyance by the same owner, and this protection extends also to a purchaser of land at a judicial sale.    *Ousley* v. *Bailey*, 111 *Ga.* 783; *Goodwynne* v. *Bellerby*, 116 *Ga.* 901; *Harvey* v. *Sanders*, 107 *Ga.* 740.    But all purchasers are charged with a knowledge of the public laws of this State, and that under them a tax deed does not convey a perfect title upon its execution, but a title subject to be defeated by redemption, or one which can only ripen by a failure to redeem.    The record of a tax deed gives notice when the sale took place, and, read in the light of the law of this State, one who takes a conveyance from the purchaser at such a sale is put on notice just as if the public law were written in the face of the deed.    If a deed were placed on record which contained on its face a statement that it did not create a perfect title in the grantee,

but only an inchoate, imperfect title, which gave him neither right of possession nor use during a specified time, and would never become a perfect title if a certain sum were paid within the time for redeeming, all persons dealing with the grantee would be put upon notice of its conditional and defeasible character, and would take a conveyance from him subject thereto. Suppose that a deed were made to secure a debt, and on its face it declared that it conveyed title only for that purpose, and that if the debt should be paid within a time named it would cease to be of force or would be defeated, would not any person who took under the grantee take subject to the condition, and be put upon notice thereof, and inquiry as to whether the debt had been paid or the note secured thereunder surrendered, if past due? Some of the language in the decision of *Cumming* v. *McDade*, 118 *Ga.* 612, 616, might appear to indicate that a taker of a title made to secure a debt might stand in the position of an innocent purchaser. But neither the opinion in that case nor the record of file in this court shows that there was anything on the face of the deed then under consideration to show that it was made to secure a debt, rather than it was a deed of bargain and sale. If the law writes into the face of a record that a deed is conditional or defeasible, all who deal with it are as much put upon notice as if it were expressed by the words of the deed.

It is also contended that those holding under the purchaser at the tax sale in this case were protected, on the ground that they were innocent purchasers without notice of an equity. *Dill* v. *Hamilton*, 118 *Ga.* 208; *Johnson* v. *Equitable Securities Co.*, 114 *Ga.* 604; Civil Code, § 3938. What has been said above in regard to the notice given by the record of the tax deed applies with equal force to this contention. One buying the land from the grantee in that deed was not in the position of a purchaser who acts in reliance on a recorded deed which on its face conveys perfect title. On the contrary, as already stated, the laws of this State put him upon notice that the tax deed did not convey a perfect and indefeasible title, but only a title which might be defeated by redemption.

It is urged that the execution having been issued, not against the person as owner of the land, but against the land itself, the proceeding was in the nature of one in rem, and therefore the

title conveyed by the tax deed was good. In *Hilton* v. *Single-tary*, 107 *Ga.* 826, it was said: "It follows from the above, that when a plaintiff in a suit for the recovery of land shows a title thereto founded upon such a sheriff's sale occurring more than twelve months prior to the commencement of his suit, and that this sale was regularly had under a fi. fa. issued by the comptroller-general, this makes out a prima facie case in favor of the plaintiff." But the prima facie case is not one which is absolutely conclusive. If it be conceded that the plaintiffs made out a prima facie case, the defendants desired to rebut it by showing that in fact there had been a redemption, and the court declined to allow this to be done.

It is further argued, on behalf of the defendants in error, that they should be protected, under the principle that when one of two innocent persons must suffer by the act of a third person, he who put it in the power of the third person to inflict the injury must bear the loss. Civil Code, § 3940. The statute made no direct requirement of a reconveyance for one who redeems land sold at a tax sale prior to 1898. Acts 1898, p. 85. It seems doubtful whether that act applies to wild land, as it refers to redemptions within one year. Probably the owner could have obtained a cancellation by a proceeding in equity on the ground that the recorded tax deed constituted a cloud on his title. 2 Cooley on Taxation (3d ed.), 1447–1449. But the failure to do so was not such an act on his part as brought him within the legal principle relied on. He did not voluntarily make the conveyance to the purchaser, nor do anything except fail to pay his taxes. It is alleged in the answer that the owner redeemed the land within the time prescribed by law and received possession of the tax deed. In view of what has been said above in regard to the law in relation to tax sales, we do not think that the mere failure to demand a reconveyance or to proceed in equity to have the recorded deed canceled was such conduct on his part as would prevent him from showing that there was in fact a cancellation within the time prescribed by law. Neither party appears to have been in actual possession of the land, except as evidenced by the cutting of timber, etc., for a time by persons acting under the original owner, and the purchaser at the tax sale had no other indicia of ownership than the tax deed. Had there been

possession by those claiming under the tax deed, a title by prescription might have ripened. *Greer* v. *Fergerson,* 114 *Ga.* 552.

We are of opinion that the court erred in striking the portions of the answer which set up the defense indicated, and in refusing to admit evidence in support thereof.

*Judgment reversed. All the Justices concur, except Simmons, C. J., absent.*