18366. THE B-X CORPORATION *et al. v.* JETER.

Submitted October 14, 1953—Decided November 12, 1953—
Rehearing denied November 25, 1953.

*Wm. G. Grant, Grant, Wiggins, Grizzard & Smith,* for plaintiffs in error.

*Frank A. Bowers,* contra.

Candler, Justice. An amended petition, which Luncy Jeter filed on July 18, 1952, against The B-X Corporation and its president, Thomas B. West, made in substance the following case: During 1948 an execution was issued by the tax collector of Fulton County against the plaintiff for State and county taxes amounting to $16.97. It was levied on a house and lot known as No. 946 Simpson Street, N.W., Atlanta, Georgia, having a value of $4,000. The property was sold on July 6, 1949, for the purpose of satisfying the execution and was purchased by and conveyed to the defendant B-X Corporation for $34.65. The original owner, however, remained in possession of the premises. On May 19, 1952, the purchaser by a writing, which Thomas B. West, its president, signed, notified the plaintiff that his right to redeem the property would expire and be forever foreclosed and barred on and after July 19, 1952, and that he could at any time before that date redeem his property by paying to it the redemption price, as fixed and provided by law. Prior to the date upon which his right to redeem expired, the plaintiff offered to pay and tendered to the defendant West, as president of the defendant B-X Corporation, the full amount of money which he was required to pay for the redemption of his property, but acceptance of it was refused. With the filing of his petition, he paid into the registry of the court $70, a sum in excess of the amount required for redemption, and by his petition made a continuing tender of it. It was also alleged in the petition that the defendants had been, with respect to the plaintiff's right to redeem his property, stubbornly litigious; that they had, in the transaction declared on, acted in bad faith; and that they had, in refusing to accept a tender of an amount sufficient to redeem his property, made it necessary for him to incur an unnecessary

expense of $500 for legal services. Besides for process and general relief, the prayers were: that the defendants be enjoined, temporarily and permanently, from foreclosing and barring the plaintiff's right of redemption and from exercising any acts of dominion or ownership over the premises involved; that a decree be entered directing cancellation of the tax deed, since it had been fully satisfied by redemption; and that the plaintiff have and recover judgment against the defendants for $2,000 as punitive damages and $500 as attorney's fees. By way of answer to the petition, it was admitted that the defendant B-X Corporation acquired title to the property involved in consequence of a tax sale, for a consideration of $34.65, and by a conveyance which was executed on July 6, 1949, and that the defendant corporation had in writing notified the plaintiff that his right to redeem the property would be forever foreclosed and barred on and after July 19, 1952. But all other substantial allegations of the petition were denied by the answer. It was stipulated that the plaintiff, with the filing of his petition, paid into the registry of the court $70 as a continuing tender of an amount which he insists was sufficient to effect redemption of his tax-sold property; that the defendants paid the Sheriff of Fulton County $11 as fees legally due him for serving eleven redemption foreclosure notices; and that the defendants paid the Fulton Daily Report Company $10 as a necessary advertising cost for the publication of a redemption foreclosure notice.

On the trial the testimony for the plaintiff tended to show that, after the redemption foreclosure notice was served, but prior to the day on which the right of redemption expired, the plaintiff personally made two visits to the offices of the defendant corporation for the purpose of redeeming his property, conferring each time while there with the defendant West, his first visit being on July 1 and the other on July 15. On each occasion he carried with him and in his hand at least $100 in cash. West saw the money. He told West on those visits that he wanted a settlement; that he wanted to pay and settle the taxes, that he wanted to pay the taxes which he had taken up on 946 Simpson Street, that he wanted to pay the "whole thing," and that he wanted to "redeem the taxes." On the occasion of the plaintiff's first visit and in response to his offer to settle and pay the amount due him, West

replied, "I haven't time to fool with you." West then got his hat and walked out of his office. On the occasion of the plaintiff's second visit and in response to a like statement that he wanted to settle and pay the amount due him, West replied, "The man you want to see is in New York." West then, as before, left his office. The plaintiff testified that his home had a fair, reasonable market value of $4,000. Edward L. Smith, a witness for the plaintiff, testified that he made an actual tender of $70 to the defendant West on July 18, 1952, for the plaintiff and for the purpose of redeeming his home, but an acceptance of it was refused by West. George Starr Peck, John I. Kelley, Frank Grizzard, and Saul Blau, as witnesses for the plaintiff, each testified that he is an attorney and a member of the Atlanta Bar; that each had had experience in cases involving titles to land, particularly in cases such as the instant one; and that, in their opinions, a reasonable fee for the preparation, filing, and trial of a case such as the one at bar would be $500. The defendant West, as a witness in his own behalf, gave testimony tending to disprove the allegations of the petition respecting redemption. He denied that he had refused to allow the plaintiff to redeem his property, but admitted that Edward L. Smith made a tender of $70 to him on July 18, 1952, for the plaintiff and for the purpose of redeeming the plaintiff's property, which he declined to accept. The verdict was: "We, the jury, find in favor of the plaintiff, the issues involved, and that the tax deed be cancelled. We . . . further find in favor of the plaintiff $500 for attorney's fees." A decree was entered accordingly, which also directed the clerk to pay over to the defendants the $70 which the plaintiff had, upon the filing of his petition, paid into the registry of the court. The defendants made a motion for new trial on the usual general grounds and on several special grounds, complaining of the charge and amplifying the general grounds of the motion. The amended motion was denied, and the exception is to that judgment.

1. The title which a purchaser acquires in consequence of a tax sale is an inchoate, qualified, or defeasible estate. *Bourquin* v. *Bourquin*, 120 *Ga.* 115 (47 S. E. 639). It may be compared to an estate which will ripen upon a condition, or rather, perhaps, to one which will be defeated upon the happening of a condition.

In either event, it is not a perfect title but one subject to the right of redemption. It is an estate which terminates by operation of law upon compliance with redemption requirements. *Lamar* v. *Sheppard,* 84 *Ga.* 561 (10 S. E. 1084); *Bennett* v. *Southern Pine Co.,* 123 *Ga.* 618 (51 S. E. 654); Bender *v.* Bean, 52 Ark. 132 (12 S. W. 241); Legro *v.* Lord, 10 Me. 161; Poindexter *v.* Greenhow, 114 U. S. 270 (3) (5 Sup. Ct. 903, 29 L. ed. 185). In the *Bennett* case, supra, this court cited with approval Legro *v.* Lord, supra, and in the latter case it was said: "A legal tender, within the time prescribed by law, of the amount for which an equity of redemption is held under an execution sale, is sufficient to revest the property without a deed of conveyance from the purchaser." As it relates to tax sales, redemption is an absolute right which may be exercised at any time within twelve months from the date on which the sale occurred, and at any time thereafter until the right to redeem is foreclosed and barred in the manner and way provided by law. Code § 92-8301; Code (Ann.) § 92-8306. In this case, and pursuant to Code (Ann.) § 92-8306, the plaintiff was notified in writing that his right to redeem the premises involved would be forever foreclosed and barred if such right was not exercised before July 19, 1952.

2. The redemption price for tax-sold property is the amount paid for the property at such sale, as shown by the recitals in the tax deed, plus a premium of 10 percent on that amount for each year, or fraction of a year, which has elapsed between the date of sale and the date on which redemption payment is made; and, if redemption is not made until after notice to foreclose and bar the right to redeem has been given, there shall be added to the redemption price, as a part thereof, the sheriff's cost for serving foreclosure notice or notices, and the cost incurred in publishing such foreclosure notice, if any, and the further sum of 10 percent of the amount paid for the property at such sale, to cover the cost of making the necessary examinations to determine the persons or corporations upon whom foreclosure notices should be served, which amounts must be paid to the purchaser in such tax sale, or his heirs, successors, or assigns in lawful money of the United States of America. Code (Ann.) § 92-8313. In the case at bar and for the purpose of redeeming his property, the plaintiff, before this litigation was instituted, made an actual tender

of $70 in cash to the defendants on July 18, 1952; that is freely admitted by the defendants. The defendants, however, contend that the amount required for redemption on July 18, 1952, was $72.95. The plaintiff insists that it was $69.49. They differ, as the record shows, only as to a premium of 10 percent on the purchase price of $34.65 for that fraction of a year from July 6, 1952, to July 18, 1952, which elapsed after the sale on July 6, 1949. On this point we agree with the plaintiff. Either tender or payment of the redemption price on July 1, 1952, by the plaintiff would relieve him from any legal liability to pay a premium of 10 percent on the purchase price of $34.65 for that fraction of a year between July 6, 1952, and July 18, 1952, or that fraction of the fourth year which elapsed after the sale on July 6, 1949. *McCalla* v. *Clark*, 55 *Ga.* 53; *Bourquin* v. *Bourquin*, supra; *Thurman* v. *Lee*, 181 *Ga.* 408 (182 S. E. 609); *Tiffany* v. *St. John*, 65 N. Y. 314. Tender of the redemption price due on July 1, 1952, by the plaintiff to the defendants is sufficiently shown by the facts in this case; and this is true because an actual, present bona fide offer to pay that which is due is in law a tender of the amount due. Code § 20-1105; *Jolly* v. *Jones*, 201 *Ga.* 532 (2) (40 S. E. 2d 558). Furthermore, tender of an amount due is waived when the party entitled to payment, by declaration or by conduct, proclaims that, if tender of the amount due is made, an acceptance of it will be refused. *Finney* v. *Blalock*, 206 *Ga.* 655 (3) (58 S. E. 2d 429), and citations. Equity does not require a useless formality. *Ansley* v. *Hightower*, 120 *Ga.* 719 (48 S. E. 197). Tender, when made or waived, satisfies the requirement for payment (*Anderson* v. *Barron*, 208 *Ga.* 785, 69 S. E. 2d 874), and redemption of tax-sold property, as we have said, results by operation of law from payment of the redemption price.

3. Attorney's fees as expenses of litigation are not punitive or vindictive damages, but stand alone, are regulated by Code § 20-1404, and the jury may allow them if the defendant has acted in bad faith in the transaction out of which the cause of action arose. *Williams* v. *Harris*, 207 *Ga.* 576 (63 S. E. 2d 386), and the cases there cited. The jury, under the facts and circumstances of this case, was fully authorized to find, as it did, that the defendants' conduct respecting the plaintiff's right to redeem

# 256

his property was in bad faith; and the award of $500 for attorney's fees was abundantly supported by evidence.

4. Since the special grounds of the motion for new trial have not been argued in the brief for the plaintiffs in error, or otherwise insisted upon in this court, the fourth headnote does not require elaboration.

The judgment complained of is not erroneous for any reason shown by the record.

*Judgment affirmed. All the Justices concur, except Duckworth, C. J., not participating.*