297 Ga. 237
FINAL COPY

S15A0406.  LAND USA, LLC v. GEORGIA POWER COMPANY.

THOMPSON, Chief Justice.

Appellant Land USA, LLC ("Land USA") filed suit against Georgia Power Company ("Georgia Power") for quiet title, trespass, and ejectment, challenging the validity of an easement Georgia Power claimed on property owned by Land USA in Fulton County, Georgia.  Finding that Georgia Power had a valid easement, the Fulton County Superior Court granted Georgia Power's motion for summary judgment on all counts.  Land USA filed a timely appeal to this Court.  For the reasons discussed below, we affirm the order of the trial court in part and reverse and remand to the trial court in part for further action consistent with this opinion.

The underlying facts are not in dispute.  In 2009, the Georgia Department of Transportation ("GDOT") began a road-widening project which required Georgia Power to update and relocate an electrical transmission line Georgia Power had maintained along Donald Lee Hollowell Parkway since the 1960s.  Seeking to clarify its rights with respect to maintaining the electric line, Georgia

Power sought an easement from L. J. Fuller, the owner of a piece of property (the "Property") abutting the parkway.[1]  Among other things, Georgia Power sought to explicitly prohibit Fuller and any future owner of the Property from building structures within 25 feet of the electrical line's center.  Fuller, however, was behind on his property taxes and, on March 3, 2009, the Fulton County Sheriff sold the Property at a tax sale to Investga.com, LLC ("Investga").  On April 22, 2009, Investga recorded a tax deed on the Property.  Although aware of the tax sale, Georgia Power continued to negotiate the easement with Fuller.

After negotiations between Georgia Power and Fuller stalled, Georgia Power filed a condemnation action against the Property on July 14, 2009, but dismissed the action without prejudice two months later when Fuller granted it the requested easement in exchange for $24,000.[2]  Upon completion of the GDOT road-widening project in January 2010, Georgia Power's electrical line was re-energized and put back into service.

---

[1] It is undisputed that Georgia Power's electric line runs along the northern edge of the Property with no utility poles or other support structures located thereon.  Additionally, there is evidence in the record that the electrical lines are actually located within the road's right-of-way and not on the Property.

[2] According to Georgia Power, Fuller promised to pay the back taxes and redeem the Property prior to expiration of the redemption period.

On March 3, 2010, Investga properly served notices of foreclosure of the right to redeem the Property to all interested parties, including Georgia Power. Interested parties had until June 10, 2012 to redeem the Property, but none did. Thereafter, Investga sold the Property to Land USA and, on December 6, 2013, Land USA filed the instant action challenging the validity of the easement Georgia Power had obtained from Fuller and sought to maintain over the Property. Land USA moved for partial summary judgment and Georgia Power filed a cross-motion seeking summary judgment on all of Land USA's claims. Granting summary judgment to Georgia Power, the trial court found Fuller not only had the ability to convey an easement to Georgia Power following the tax sale of the Property, but that the post-tax sale easement obtained by Georgia Power was not extinguished when the redemption period for the Property closed without the Property being redeemed. The trial court further determined that Land USA's claims for ejectment and trespass failed as a matter of law because the electric line was within the public GDOT right-of-way and did not materially encumber the Property,[3] the electric line was a necessary and constituent part of

---

[3] See Faulkner v. Georgia Power Co., 243 Ga. 649 (256 SE2d 339) (1979).

Georgia Power's service to the public[4] and, as Land USA was neither the true owner of the Property nor in possession at the time the line was re-energized, it lacked standing to assert a trespass claim against Georgia Power.[5]

1. Land USA contends that the trial court erred in finding Georgia Power had a valid and enforceable written easement over the Property. Land USA contends that the easement Georgia Power obtained from Fuller in 2009 after he had already lost the property to a tax sale became a nullity when the property was not redeemed after Investga properly invoked the state barment statutes set forth in OCGA § 48-4-45 et seq. We agree.

In Georgia, when property is sold for unpaid taxes, the tax sale purchaser obtains a deed to the property. See Bennett v. Southern Pine Co., 123 Ga. 618, 621 (51 SE 654) (1905). This deed, however, does not provide the tax sale purchaser with absolute title to the property, but rather gives the purchaser a defeasible fee interest therein with the title remaining subject to encumbrance for at least one year after purchase due to other interested parties' statutory

---

[4] See Waldrop v. Georgia Power Co., 233 Ga. 851, 853 (213 SE2d 847) (1975).

[5] See Brown Inv. Group, LLC v. Mayor and Aldermen of City of Savannah, 289 Ga. 67, 68 (709 SE2d 214) (2011).

4

rights of redemption. See National Tax Funding, L.P. v. Harpagon Co., LLC,

277 Ga. 41, 42 (1) (586 SE2d 235) (2003). As previously outlined by this

Court,

> [a]fter the tax sale, the delinquent taxpayer or any other party holding an interest in or lien on the property may redeem the property by paying to the tax sale purchaser the purchase price plus any taxes paid and interest. If the property is redeemed, the tax sale is essentially rescinded and a quitclaim deed is executed by the tax sale purchaser back to the owner of the property at the time of levy and sale. . . .This right of redemption, however, may be terminated by the tax sale purchaser anytime after one year following the tax sale. After that year has run, the tax sale purchaser may "terminate, foreclose, divest, and forever bar" all rights to redeem the property by giving notice under OCGA § 48-4-40 et seq. ("the barment statutes) to all parties with redemption rights. The barment statutes apply to "all persons having . . . any right, title or interest in, or lien upon" the subject property.

(Citations omitted.) Id. at 43.

It is undisputed that at the time Georgia Power sought an easement from

Fuller in 2009, the last deed in the chain of title to the Property belonged to

Investga. As the redemption period had not yet terminated, Fuller retained

possession of the Property. However, he lacked a sufficient interest therein to

grant Georgia Power the perpetual, express easement it sought. See Georgia

Lien Svcs., Inc. v. Barrett, 272 Ga. App. 656, 658 (613 SE2d 180) (2005)

5

(stating that after a tax sale, the record owner has only a right to redeem the property, and once that period expires, the former record owner has no interest in the property). At best, the easement granted to Georgia Power by Fuller conveyed an interest in the Property which provided Georgia Power with a right of redemption. See Leathers v. McClain, 255 Ga. 378 (338 SE2d 666) (1986) (parties acquiring an interest in property following a tax sale are entitled to notice and to exercise the right of redemption).

Here, Investga gave proper notice under the barment statutes to all interested parties, including Georgia Power, of Investga's intent to foreclose redemption of the Property. Had the Property been redeemed by any party, title thereto would have reverted to Fuller and the easement Georgia Power purchased would have been validated. See OCGA § 48-4-43 ("When property has been redeemed, the effect of the redemption shall be to put the title conveyed by the tax sale back into the defendant in fi. fa. . . ."). See also Reece v. Smith, 276 Ga. 404, 406 (577 SE2d 583) (2003) ("[A] grantor who conveys by warranty deed an interest that he does not then own, but later acquires, will be estopped to deny the validity of the first deed."). When no party redeemed the Property within the applicable period, however, the right of redemption was

6

foreclosed and fee simple title to the Property vested in Investga. See National

Tax Funding, LP, supra, 277 Ga. at 43. As a result, the easement Georgia Power

obtained from Fuller following the tax sale was extinguished. See OCGA § 44-

9-7.[6]

While OCGA § 44-9-7 does not directly address the viability of an

easement granted by the defendant in fi. fa. following a tax sale of real property,

we disagree with the trial court's determination that this statute has no

applicability to the facts presented. It is an elementary rule of statutory

construction that statutes relating to the same subject matter are "in pari materia"

and must be construed together and harmonized whenever possible. See Snyder

v. State, 283 Ga. 211, 214 (657 SE2d 834) (2008); Iglesia Del Dios Vivo

Columna Y Apoyo De La Verdad La Luz Del Mundo, Inc. v. Downing, 321 Ga.

App. 778 (742 SE2d 742) (2013). Here, OCGA § 44-9-7 addresses the effect

of tax sales of real property on easements and must be construed in relation to

---

[6] OCGA § 44-9-7 provides:

No sale of real property under a fi. fa. for taxes or under a fi. fa. for any assessment for improvements shall extinguish or affect any easement or right of way in, over, under, or across said real property, which easement or right of way was created by an operation of law or by an express grant; provided, however, that an easement or right of way created by an express grant must be recorded prior to the recording of the fi. fa. for taxes or assessment for improvements under which the real property subject to the easement or right of way was sold.

other statutes which similarly address the effect of tax sales on property rights.[7]

See Bennett, supra, 123 Ga. at 620 ("Tax sales are creatures of statute. When, how, and under what circumstances they are to be made, and their effect when made, are matters depending upon the statute governing them."). Of particular relevance to this case are those statutory provisions dealing with the rights accorded an owner or interest holder in real property to redeem the property following a tax sale,[8] as well as those providing a means by which the tax sale purchaser can foreclose this right of redemption. [9]

Construing OCGA § 44-9-7 in relation to these statutes, we conclude that by explicitly providing that easements recorded prior to the recording of a tax fi. fa. are not extinguished by a tax sale of the property, OCGA § 44-9-7 implicitly provides that any easement not so recorded is extinguished if the

---

[7] Statutes governing tax sales are primarily found in Chapter 4 of Title 48 of the Official Code of Georgia Annotated, the provisions of which are divided into Articles 1 through 5. Article 3, encompassing OCGA §§ 48-4-40 through 48-4-48, deals with the statutory right of redemption following a tax sale.

[8] See OCGA § 48-4-40.

[9] Once the statutory redemption period expires, OCGA § 48-4-45 gives the tax sale purchaser, or his heirs, successors, or assignees the power to "'terminate, foreclose, divest, and forever bar' all rights to redeem the property by giving notice under OCGA § 48-4-40." National Tax Funding, LLC, supra at 43.

property is not redeemed.[10] Once the right to redemption has been terminated, the tax sale purchaser obtains absolute and unconditional title to the land. See Forrester v. Lowe, 192 Ga. 469, 476 (15 SE2d 719) (1941). Thus, it follows that after a tax fi. fa. on real property has been recorded, the defendant in fi. fa. cannot successfully encumber the property with an express easement or right-of-way without first satisfying either the tax fi. fa. or subsequent tax deed.

In the instant case, both the tax fi. fa. and the tax deed were recorded prior to Georgia Power's recording of the express easement it obtained from Fuller. As a result, Georgia Power's express easement over the Property was taken subject to the tax deed. Accordingly, when the right of redemption expired and Investga's tax deed ripened into fee simple title, Georgia Power's express easement was extinguished. See Forrester, supra (once the owner and all other interested parties authorized by law to redeem the property lose their redemptive rights, they cease to have any interest in the land).

Nor do we agree with Georgia Power's claim that it obtained a prescriptive easement over the Property which not only entitles it to operate and

___

[10] Under the maxim "expressio unius est exlusio alterius," the express mention of one thing, implies the exclusion of another. See O'Donnell v. Durham, 275 Ga. 860, 861 (573 SE2d 23) (2002); City of Macon v. Walker, 204 Ga. 810, 814 (51 SE2d 633) (1949).

9

maintain the electric line, but allows it to enforce the required 25-foot building prohibition.[11] "Prescriptive rights are to be strictly construed." MEA Family Investments, LP v. Adams, 284 Ga. 407, 408 (667 SE2d 609) (2008). Having sought permission from and paid consideration to Fuller for an express easement relating to the building restriction, Georgia Power abandoned any adverse claim it might have had to a prescriptive easement with respect to this prohibition. See Keng v. Franklin, 267 Ga. 472 (480 SE2d 25) (1997). Moreover, inclusion of a 25-foot building restriction incorporates and traverses more territory over the Property than any prior prescriptive easement claimed by Georgia Power and clearly exceeds the statutorily limited width of 20 feet allowed for such easements.[12] See id.; Jackson v. Norfolk Southern R., 255 Ga. App. 695, 696-697 (566 SE2d 415) (2002); Lopez v. Walker, 250 Ga. App. 706, 707 (551 SE2d 745) (2001).

For the foregoing reasons, we find the trial court erred when it determined Georgia Power had a valid and enforceable easement over the Property and

---

[11] Having found Georgia Power had a valid express easement, the trial court made no findings as to whether Georgia Power had obtained a prescriptive easement over the Property.

[12] Georgia Power admits that the $24,000 it paid Fuller for the easement was primarily to obtain the 25-foot building restriction.

erred in granting summary judgment to Georgia Power on Land USA's claims based on this determination.

2. Our inquiry does not end here, however, as we must additionally consider whether the trial court erred in determining Land USA's claims for trespass and ejectment also failed as a matter of law.

(a) Relying on a survey conducted by Georgia Power and submitted into evidence, the trial court found that the power line at issue was primarily located within the public GDOT right-of-way along Donald Lee Hollowell Parkway and that any presence of the line over the Property thus did not materially encumber or impose a servitude on the Property sufficient to provide Land USA with a cause of action. See Faulkner v. Georgia Power Co., supra, 243 Ga. 649. Irrespective of the extent to which the electric line traverses the Property, however, the existence of the line over the property coupled with any attempt by Georgia Power following foreclosure of the right to redemption to restrict or otherwise interfere with Land USA's use and enjoyment of the Property due to the proximity of the electric line would provide Land USA with a cause of action for trespass. See OCGA § 51-9-1 ("The right of enjoyment of private property being an absolute right of every citizen, every act of another which

11

unlawfully interferes with such enjoyment is a tort for which an action shall lie."). In determining that Georgia Power's newly energized electric line's presence was de minimis and insufficient to support a claim for trespass over the Property, the trial court erred in looking only to the actual presence of the line itself and in failing to consider any additional impact the line's presence over and alongside the Property might have to Land USA's use and enjoyment thereof.

(b) Similarly, the trial court erred in deciding Land USA lacked standing to bring a trespass action against Georgia Power.[13] Land USA contends that any building restrictions on the Property caused by the presence thereon of Georgia Power's electric line constitutes a continuing trespass for which Land USA would be entitled to seek damages. Georgia Power conceded at oral argument that the $24,000 it paid Fuller for the easement was primarily to obtain a building prohibition which had not been part of any previous prescriptive easement. To the extent such a building prohibition is now required on portions

[13] Unlike in Brown Inv. Group, supra, where a tax sale purchaser brought a trespass claim against the City of Savannah for the one-time demolition of a building on the subject property that occurred during the redemption period following a tax sale, Land USA's trespass claim arises in part from Georgia Power's attempts to perpetually restrict Land USA's right to build on the Property.

of the Property due to the presence of the line, the line arguably impinges on Land USA's use and enjoyment of the property and creates an additional servitude over the Property for which Land USA has standing to seek damages. See Faulkner, supra, 243 Ga. at 650.

(c)  Finally, we agree with the trial court's conclusion that Land USA's ejectment claim against Georgia Power fails as a matter of law.  See Waldrop v. Georgia Power Co., 233 Ga. 851 (213 SE2d 847) (1975); Adams v. Georgia Power Co., 299 Ga. App. 399 (682 SE2d 650) (2009).  A public utility company has the right to acquire land necessary for its corporate purpose by purchase, by consent of the landowner, or by condemnation.  See Waldrop, supra at 853. "If the land be taken without [the landowner's] consent and without condemnation, a right of action accrues to [the landowner] against the company." Id.  However, where, as here, an existing power line has become "a necessary and constituent part of [the utility's] service to the public," the landowner is "estopped from recovering the land in ejectment or from enjoining its use for the service" and is limited to pursuing "an appropriate action in damages."  Id., see Adams, supra, at 401 (2).  Accordingly, we affirm the trial court's grant of summary judgment to Georgia Power on the ejectment claim.

13

For the foregoing reasons, the trial court's order granting summary judgment to Georgia Power on Land USA's claim for ejectment is affirmed, while the trial court's grant of summary judgment to Georgia Power on Land USA's other claims is reversed and the case is remanded to the trial court for further action consistent with this opinion.

Judgment affirmed in part and reversed in part, and casee remanded. All the Justices concur.


Decided June 1, 2015.

Title to land. Fulton Superior Court. Before Judge Campbell.

Ayoub & Mansour, John A. B. Ayoub, Carolina D. Bryant, for appellant.

Troutman Sanders, Douglas A. Henderson, Benjamin W. Cheesbro, for appellee.