**THIRD DIVISION**
**DILLARD, C. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 29, 2019**

# In the Court of Appeals of Georgia

A19A0274. REPUBLIC TITLE COMPANY, LLC v. FREEPORT
TITLE AND GUARANTY, INC., AS TRUSTEE OF THE
NEW STOKES AVENUE LAND TRUST.

HODGES, Judge.

This dispute concerns entitlement to excess funds remaining following a tax sale pursuant to OCGA § 48-3-3. Freeport Title and Guaranty, Inc., as Trustee of the New Stokes Avenue Land Trust ("Freeport"), owner of the subject property at the time of the tax sale, petitioned for the excess funds. Republic Title Company, LLC ("Republic"), which held a security deed for the property, also claimed entitlement to the funds. Freeport amended its petition to request that the trial court also quiet title to the property, alleging that Republic's security deed reverted before the tax sale and acted as a cloud on Freeport's title. The trial court appointed a special master and adopted his findings awarding the excess funds to Freeport and vesting title to the

property with Freeport free and clear of Republic's adverse claims. Republic appeals the trial court's order, arguing that the trial court erred (1) in adopting the portion of the special master's report which found Freeport was entitled to the excess funds, as such a finding was beyond the special master's jurisdiction; and (2) in granting Freeport's petition to quiet title because Freeport did not have standing to make such a request. For the following reasons, we affirm.

"[O]nce the trial court adopts the special master's findings and enters judgment, the court's decision is upheld by the appellate court unless clearly erroneous. . . .[b]ut conclusions of law are reviewed de novo." (Citations omitted.) *McGregor v. River Pond Farm*, 312 Ga. App. 652, 653 (1) (719 SE2d 546) (2011).

So viewed, the record shows that on November 7, 2017, the Fulton County Sheriff conducted a tax sale of property located at 1502 Stokes Avenue in Atlanta, Georgia.[1] This sale generated funds in excess of the tax obligation and, pursuant to

---

[1] As our Supreme Court has explained, "[a]ll owners of non-exempt real and tangible personal property are subject to taxation on the property's fair market value as of January first of each year. In order to secure payment of these taxes when they fall delinquent, the law creates a lien which extends not only to the property giving rise to the tax obligation, but also to all other property owned by the taxpayer. Generally, a lien for delinquent ad valorem taxes arises at the time the taxes become due and unpaid, and covers all property in which the taxpayer has any interest from the date the lien arises until such taxes are paid. When taxes are not paid, the Tax Commissioner is authorized to issue a writ of fieri facias (or tax execution), which is

OCGA § 15-13-3,[2] Freeport, the owner of the property at the time of the sale, filed a money rule petition against the Sheriff seeking to recover the excess funds.[3] Republic intervened in the action, claiming that it was entitled to the excess funds by virtue of its security deed to the property. Freeport amended its petition and asked the trial court to also quiet title to the property pursuant to OCGA § 23-3-40 et seq. by removing the cloud of Republic's security deed. Freeport alleged that Republic's security deed matured on July 1, 2007, and thus title reverted to the grantor of the deed in 2014 pursuant to OCGA § 44-14-80.[4]

---

a directive to the appropriate officer (often the sheriff) to levy upon the property, sell it and collect the unpaid taxes. Following a tax sale, after the payment of taxes, costs, and other expenses, any excess proceeds may be claimed by the parties entitled to receive them, including those who hold other liens against the property." (Citations and punctuation omitted.) *Nat. Tax Funding, L.P. v. Harpagon Co.*, 277 Ga. 41, 42 (1) (586 SE2d 235) (2003).

[2] The statute permits suit against numerous governmental officers, including the sheriff, if the officer refuses, following proper demand, to pay money in his hands which belongs to another. OCGA § 15-3-1 (a). Here, Freeport alleged in its petition that it made pre-suit demand to the sheriff, but no such demand is in the record. The law also permits Freeport to obtain interest from the sheriff on any sums withheld, but Freeport did not seek interest and none was awarded. See OCGA § 15-13-3 (a).

[3] On appeal, Republic does not contest that Freeport was the owner of the property on the date of the tax sale.

[4] The statute provides that "[t]itle to real property conveyed to secure a debt or debts shall revert to the grantor or his or her heirs, personal representatives,

3

Following Freeport's motion requesting a special master, the trial court appointed one to "make a determination and/or Findings of Fact on the issues presented in the Petition[.]" The Special Master held a hearing at which both Freeport and Republic were represented by counsel.[5] In addition to contesting Freeport's entitlement to the excess funds, Republic also argued that, following the tax sale, Freeport lacked a sufficient interest in the property to have standing to request the trial court to quiet title.

After allowing additional briefing by the parties, the Special Master issued his report. The Special Master determined that Republic's security deed contained a fixed maturity date in 2007, and thus title reverted to the grantor before the tax sale. He also noted that Republic presented no evidence as to how much, if anything, was still

successors, and assigns at the expiration of seven years from the maturity of the debt or debts or the maturity of the last installment thereof as stated or fixed in the record of the conveyance or, if not recorded, in the conveyance; provided, however, that where the parties by affirmative statement contained in the record of conveyance intend to establish a perpetual or indefinite security interest in the real property conveyed to secure a debt or debts, the title shall revert at the expiration of the later of (A) seven years from the maturity of the debt or debts or the maturity of the last installment thereof as stated or fixed in the record of conveyance or, if not recorded, in the conveyance; or (B) 20 years from the date of the conveyance as stated in the record or, if not recorded, in the conveyance[.]" OCGA § 44-14-80 (a) (1).

[5] In light of the sheriff's agreement to interplead the excess funds in to the registry of the court, the Special Master excused him from the hearing.

4

owed on the note secured by the deed. Lastly, the Special Master found that Freeport had standing to seek to quiet title. Consequently, the Special Master concluded that Freeport was entitled to an order awarding it the excess funds and establishing Freeport as the owner of the property free and clear of Republic's reverted security deed. On August 6, 2018, the trial court adopted the Special Master's report, and Republic appealed.

1. Republic argues that the trial court erred in adopting the portion of the Special Master's report which found Freeport was entitled to the excess funds because such a finding was beyond the scope of the Special Master's jurisdiction. We find no reversible error.

"At the option of the complainant as prayed for in the complaint, the [trial] court, upon receipt of the complaint, shall submit the same to a special master as provided for in Code Sections 23-3-63 through 23-3-68[.]" OCGA § 23-3-43.

> [T]he special master shall have complete jurisdiction within the scope of the pleadings to ascertain and determine the validity, nature, or extent of petitioner's title and all other interests in the land, or any part thereof, which may be adverse to the title claimed by the petitioner, or to remove any particular cloud or clouds upon the title to the land and to make a report of his findings to the judge of the court . . .

5

OCGA § 23-3-66.

"Although a trial court is not required to hear exceptions to a special master's report, the trial court must independently evaluate the correctness of the report before adopting it as the judgment of the court." (Citation omitted.) *Steinichen v. Stancil*, 281 Ga. 75, 76 (2) (635 SE2d 158) (2006). In other words, regardless of what was contained in the Special Master's report, the trial court, not the Special Master, ordered disbursement of the excess funds to Freeport upon evaluation of the report. See *Eardley v. McGreevy*, 279 Ga. 562, 564-565 (2) (615 SE2d 744) (2005) ("[I]n submitting a quiet title case to a special master, the trial court does not cede jurisdiction to render a final decision, and the trial court is not obligated to accept a special master's erroneous legal conclusion.") (citation omitted). Notably, Republic enumerates no error with the merits of the conclusion of both the Special Master and the trial court that the reversion of the security deed entitled Freeport to receive the excess funds. In light of all of the foregoing, pretermitting whether it was error for the Special Master to opine as to disbursement of the excess funds, Republic can demonstrate no harm. See, e.g., *Hertz Corp. v. McCray*, 198 Ga. App. 484, 486 (2) (402 SE2d 298) (1991) ("Appellant is required to show harm as well as error to prevail on appeal[.]") (citation omitted).

6

2. Republic next argues that the trial court erred in issuing a final decree vesting title with Freeport free and clear of Republic's adverse claim because Freeport lacked standing to petition for such relief. We disagree.

Georgia law provides two procedures for quieting title to land. Under OCGA § 23-3-40, known as conventional quiet title, an action may be

> sustained in equity for the purpose of causing to be delivered and canceled any instrument which has answered the object of its creation or any forged or other iniquitous deed or other writing which, though not enforced at the time, either casts a cloud over the complainant's title or otherwise subjects [it] to future liability or present annoyance, and the cancellation of which is necessary to [its] perfect protection.

The other statute, OCGA § 23-3-61, known as quiet title against all the world, provides that

> [a]ny person, which term shall include a corporation, partnership, or other association, who claims an estate of freehold present or future or any estate for years of which at least five years are unexpired, including persons holding lands under tax deeds, in any land in this state, whether in the actual and peaceable possession thereof or not and whether the land is vacant or not, may bring a proceeding in rem against all the world to establish his title to the land and to determine all adverse claims thereto or to remove any particular cloud or clouds upon his title to the land, including an equity of redemption, which proceeding may

7

be against all persons known or unknown who claim or might claim adversely to him, whether or not the petition discloses any known or possible claimants.

Our law has recognized that "the contemplated procedures of the two proceedings are entirely distinct from each other." (Citation and punctuation omitted.) *Republic Title Co. v. Andrews*, 347 Ga. App. 463, 464 (819 SE2d 889) (2018).[6] Here, Freeport initiated a conventional quiet title action seeking only to remove the cloud created by Republic's security deed.[7]

The relevant statutes and our case law identify who has standing to bring a case under the respective proceedings. To sustain a conventional quiet title action, the general rule is that the petitioner "must allege and prove possession in [itself]." *Sweat v. Arline*, 186 Ga. 460, 461 (2) (197 SE 893) (1938). Republic argues that, at the time

---

[6] Venue and the right to a jury trial are two such differences. See *Republic Title Co.*, supra, 347 Ga. App. at 465 (venue in conventional quiet title proceeding lies in the county of residence of the adverse claimant whereas it lies in the county where the land is located for quiet title against all the world proceeding); *Vatacs Group v. U.S. Bank, N.A.*, 292 Ga. 483, 483-484 (1) (738 SE2d 83) (2013) (noting absence to right of jury trial in conventional quiet title proceeding and availability of such right in quiet title against all the world proceeding).

[7] Not only did Freeport plead that it sought relief pursuant to OCGA § 23-3-40, but the relief requested, to remove a specific cloud created by a specific lien, is the type of relief available in a conventional quiet title action. See *Republic Title Co.*, supra, 347 Ga. App. at 466.

of the quiet title petition, Freeport was required to possess a freehold estate or an estate for years with at least five years remaining. This, however, is the standard contained in OCGA § 23-3-61 to quiet title against all the world.[8] This language appears nowhere in the conventional quiet title statute. See OCGA § 23-3-40. Because Freeport filed a conventional quiet title petition, to determine standing we need only consider whether it established current title and possession at the time of its petition.[9] See OCGA § 23-3-40; *Sweat*, supra, 186 Ga. at 461. We find that it did.

As discussed above, Freeport owned the property at the time it was sold at a tax sale.

> Whenever any real property is sold under or by virtue of an execution issued for the collection of state, county, municipal, or school taxes . . . the [tax debtor] or any person having any right, title, or interest in or lien upon such property may redeem the property from the sale by the

---

[8] Republic incorrectly asserts that *In re Rivermist Homeowners Assn., Inc.* adopted this standard for conventional quiet title petitions as well. 244 Ga. 515, 518 (260 SE2d 897) (1979) Although the Supreme Court in *Rivermist* cited portions of the predecessor statutes to both OCGA § 23-3-40 and OCGA § 23-6-61, it also specified that the petitioner in that case claimed standing to quiet title against all the world. *Rivermist*, supra, 244 Ga. at 517-518. Accordingly, its discussion of standing requirements cannot be read to engraft the language of OCGA § 23-3-61 onto conventional quiet title petitions.

[9] As a result, we need not address the exact nature of the estate acquired by the purchaser of property at a tax sale.

payment of the amount required for redemption . . . (1) [a]t any time within 12 months from the date of the sale; and (2) [a]t any time after the sale until the right to redeem is foreclosed by the giving of the notice provided for [by law]."

OCGA § 48-4-40.

Because Freeport filed its petition and the trial court ruled on it during the time when Freeport's right to redeem existed, Freeport's title as owner was not divested and the tax sale purchaser had no right to possess the property at that time. *Brown Investment Group v. Mayor & Aldermen of City of Savannah*, 289 Ga. 67, 69 (709 SE2d 214) (2011). Accordingly, Freeport standing to pursue the relief it was granted.[10]

The trial court committed no error in disbursing the excess funds to Freeport and vesting title to the property to Freeport free and clear of Republic's adverse claims.

---

[10] Republic's reliance on *Land USA, LLC v. Georgia Power Co.* is misplaced. 297 Ga. 237 (773 SE2d 236) (2015). *Land USA* found that a land owner whose property was sold at a tax sale cannot thereafter convey a perpetual easement that extends past the redemption period if the property is not redeemed. Id. at 240 (1). This case, however, only implicates Freeport's rights during the redemption period as it sought and obtained the relief requested within that period.

*Judgment affirmed. Dillard, C. J., and Gobeil, J., concur.*